FRANCIS COLLINS, Individually and as Next Friend of Daniel Collins, a Minor, Plaintiff-Appellant, *v.* WESTLAKE COMMUNITY HOSPITAL, Defendant-Appellee.

(No. 56392;

First District (3rd Division)—June 7, 1973.

Howard & French, of Chicago, (Richard G. French, Stuart N. Litwin, and Gary Dienstag, of counsel,) for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, (John M. Moelmann and D. Kendall Griffith, of counsel,) for appellee.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

Daniel Collins, a minor, by his father as next friend, seeks to recover damages for alleged negligent medical and hospital treatment which it is contended necessitated amputation of his left leg at the knee. The action was originally commenced against Westlake Community Hospital [the Hospital] and Dr. Kenneth Hubbard, M.D. At the close of plaintiff's evidence, the court directed a verdict for the Hospital on the issue of liability. The case proceeded as to Dr. Hubbard, and the jury returned a verdict in his favor. The plaintiff moved for a new trial as to the Hospital, alleging generally that plaintiff had made a case against the Hospital. The motion was denied and plaintiff now appeals from the judgment for the Hospital. His sole contention is that the evidence was sufficient to warrant submission to the jury on the ground that it was the duty of the Hospital to review the medical care being given the plaintiff by Dr. Hubbard. The facts follow.

On May 7, 1965, the plaintiff—then six years old—was struck by an automobile. Emergency aid was administered and he was taken by ambulance to Westlake Community Hospital where he was examined and treated by Dr. Margaret Bradley, a hospital employee, who set the boy's left leg in traction. Plaintiff's family physician referred the case to Dr. Kenneth Hubbard, then chairman of the Department of Orthopedics in the Hospital. The evidence is not controverted that plaintiff's parents engaged Dr. Hubbard's services.

When Dr. Hubbard visited the plaintiff on the evening of May 7, he reviewed the nurses' notes and replaced the moleskin traction applied by Dr. Bradley with a floating Thomas splint. The nursing staff kept a close watch on plaintiff's condition during the first night, and notified Dr. Bradley at 10 o'clock the next morning when they noticed that the patient's foot was cool to the touch. Dr. Bradley loosened the elastic bandage on plaintiff's leg, and warmth temporarily returned to the injured limb.

At 4:00 P.M., on May 8, Dr. Hubbard checked the reports and, noting that plaintiff's circulation was satisfactory, increased the traction. At 7:30 that evening, he was advised by the nurse on duty that plaintiff's foot was not properly aligned. He advised the nurse to continue checking the circulation of the leg, and informed her that he would see the patient shortly. When he saw the plaintiff at 11:00 that evening, he was concerned with his total loss of sensation in the left foot, and requested the consultation and opinion of a nerve specialist. At 6:00 A.M., on May 9, prior to receiving the neurosurgeon's report, Dr. Hubbard was called at his home and notified by the nurse on duty that the plaintiff's foot was "cold and dusky in color." Within two hours the doctor arrived at the

Hospital, removed the traction, and ordered immediate exploratory surgery. A blood clot was found in the femoral artery. The following day, May 10, after a vascular specialist advised that the plaintiff had irreversible ischemia of the left leg, the plaintiff's left leg was amputated at a point four inches below the knee, and two weeks later it was amputated at the knee. Plaintiff contends that it was the duty of the Hospital to review the medical care being given plaintiff by Dr. Hubbard, notwithstanding the fact that the case was primarily in the charge of Dr. Hubbard who had been engaged by plaintiff's parents.

■■ In its motion to dismiss this appeal, the Hospital has raised the issue [and the record supports its contention] that the plaintiff at trial had not pleaded the specific duty nor the breach thereof by the Hospital to review the medical care being given to plaintiff by the attending physician. An examination of the third amended complaint, which is the one now before us, reveals that no issue had been formally made on this point. The rule generally applicable in such cases is that "* * * an issue not presented to or considered by the trial court cannot be raised for the first time on review." (*Woman's Athletic Club v. Hulman*, 31 Ill.2d 449, 454.) However, in the case of *McKinney v. Nathan*, 1 Ill.App.2d 536, 543, the court said:

"The parties may, by the introduction of evidence or their conduct in the trial, waive formal pleadings or form their own issues on the evidence introduced, and they may voluntarily present under the evidence issues not presented by the pleadings. An objection that a certain matter is not an issue under the pleadings or that it is not denied or properly denied may be waived by a party where he introduces or brings out evidence bearing on the subject, or tries the case as if the matter were not in issue."

Plaintiff argued this issue before the court on the Hospital's motion for a directed verdict. Several witnesses testified as to the procedures of review employed by the Hospital, and the Hospital effectively waived formal pleadings as to this issue. We find that plaintiff's theory on his appeal is properly reviewable, and the motion to dismiss his appeal is denied.

■■ The complaint alleged four specific acts of negligence, and the issue of defendant's duty to review was properly presented to the trial court for its consideration. The plaintiff, in his post-trial motion, sought a new trial on the ground that he had established a *prima facie* case against the Hospital. He did not specify which theory he relied upon. However, it appears that the appeal is based entirely on the theory that plaintiff made a *prima facie* case with regard to defendant's breach of its duty to review the medical care being given the plaintiff. Inasmuch as plaintiff has chosen not to argue that the evidence presented at trial

established a *prima facie* case as to one or all four allegations of negligence in his third amended complaint, plaintiff's claim—insofar as it pertains to the specific acts of negligence alleged in that pleading—is waived. (*Kessler v. Lepiane,* 69 Ill.App.2d 1, 3.) Theories not argued on appeal are waived. (*Abron v. Public Pontiac, Inc.,* 64 Ill.App.2d 73, 75-76.) Therefore, we need consider only whether or not a directed verdict was proper on the issue of the alleged breach of defendant's duty to review the medical care being given the plaintiff by Dr. Hubbard.

Plaintiff cites *Darling v. Charleston Hospital,* 33 Ill.2d 326, *aff'g* 50 Ill.App.2d 253, and relies heavily upon the facts in that case and the finding of the court that the hospital was liable. However, there are substantial differences between the two cases. In *Darling,* the plaintiff sustained a broken leg and was treated by one Dr. Alexander, a hospital employee, who directed that the leg be put in traction and a plaster cast applied. Following this, the condition of plaintiff's leg deteriorated for fourteen days, from his first treatment to the day when an orthopedic surgeon was brought in, examined the plaintiff, and found impaired circulation caused by the hemorrhaging of the leg against the constriction of the cast. The court found that the evidence was sufficient to support the verdict on the ground that the hospital failed "to review the treatment rendered to the plaintiff and to require consultants to be called in as needed." The attending physician, an employee of the hospital and subject to its direct supervision, was not a specialist in orthopedics. The court found that the procedures he employed to treat the patient were contrary to good medical practice and that the nurses on duty were not familiar with the symptoms which signaled an impairment of circulation. In fact, they failed to note the same in their records and report them to the doctor. The doctor took no action even when all of the classic symptoms of a circulatory disorder were present.

On the other hand, in the case before us, Dr. Hubbard was a specialist in orthopedic surgery, and although the record indicates that he was chairman of that department at the hospital, there is no evidence that he was an employee there. Plaintiff's witnesses testified that Dr. Hubbard was engaged by his parents. He was in charge of the case. He and several nurses testified that they were familiar with the classic symptoms of ischemic necrosis (death of tissue due to a lack of blood supply). The nurses reported the existence of certain symptoms to the doctor when they appeared, and when all of the symptoms appeared the nurses immediately notified Dr. Hubbard. They also reported the same to Dr. Bradley, a hospital employee, who took corrective measures. Plaintiff's condition was checked regularly, often once each hour.

The evidence does not show that Dr. Hubbard failed to exercise

good medical judgment in waiting to determine whether certain symptoms were indicative of a circulatory or nervous disorder. The decision to treat a patient in a particular manner is a medical question entirely within the discretion of the treating physician, not the hospital. (See *Lundahl v. Rockford Memorial Hospital Ass'n,* 93 Ill.App.2d 461, 466-467.) The evidence in *Darling* showed not only grossly improper medical treatment by the attending physician, but also a continuing and total failure by the hospital staff to recognize, report and react to a multitude of glaringly obvious signals indicating either the existence of a condition in the patient upon which the employed treatment had no effect, or grossly improper medical treatment by the attending physician.

The trial court properly directed a verdict in favor of the Hospital, and the judgment rendered thereon is affirmed.

Judgment affirmed.

McNAMARA, J., and McGLOON, J., concur.