(No. 46061– )

FRANCIS COLLINS, Appellant, v. WESTLAKE COMMUNITY HOSPITAL, Appellee.

*Opinion filed May 20, 1974.—Rehearing denied June 28, 1974.*

Howard & French, of Chicago (Richard G. French and Stuart N. Litwin, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (John M. Moelmann and D. Kendall Griffith, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

On May 7, 1965, Daniel Collins, age 6, was struck by an automobile while riding his bicycle. He was admitted to Westlake Community Hospital about 1:30 p.m. Upon examination by Dr. Margaret Bradley, a physician employed by the hospital, it was revealed that in addition to several other injuries Daniel had sustained a broken left leg. Traction was applied to the leg and later on the same day Daniel's parents engaged the services of Dr. Kenneth Hubbard, an orthopedic specialist, who was then chairman of the Department of Orthopedics at the hospital, but was not an employee of the hospital. On May 9, 1965, at Dr. Hubbard's direction, surgery was performed to remove a blood clot from the femoral artery. On May 10, 1965, a vascular specialist was consulted who informed Dr. Hubbard that the boy had ischemia of his left leg which was irreversible and that the leg would have to be amputated. On May 12, 1965, the leg was amputated about 4 inches below the knee, and later it was

necessary to again operate and remove the leg at the knee joint.

This action was brought against Dr. Hubbard and the Westlake Community Hospital in the circuit court of Cook County. At the close of the plaintiff's case, the court directed a verdict in favor of the hospital. The case then continued against Dr. Hubbard, and at the conclusion of the case the jury returned a verdict in favor of the doctor. The plaintiff filed a motion for a new trial as to the hospital, and the motion was denied. The appellate court affirmed the judgment of the trial court. (12 Ill. App. 3d 847.) We granted leave to appeal.

In the pleadings the plaintiff's allegations against the hospital were that the hospital had breached its duty to observe, record and convey to the plaintiff's physician any and all clinically significant signs of detrimental change in the plaintiff's condition.

Although the allegations of the complaint are based on the premise that the hospital was negligent in that it did not properly observe and report the changes in the patient's condition to the doctor, the plaintiff's primary contention in the appellate court was that the hospital was negligent in that the nurses failed to review the medical treatment being given to the patient by Dr. Hubbard and failed to report the alleged deficiencies in that treatment to the hospital administrator. The appellate court held that the plaintiff's failure to argue in the appellate court the issue raised by the pleadings constituted a waiver of that issue. It then decided the case solely on the question of whether the hospital had violated its duty to review the medical treatment given to the patient by Dr. Hubbard.

The cases cited by the appellate court in support of its conclusion that the other issue had been waived were cases wherein the decisions were based on former

Uniform Appellate Court Rule 7. (Ill. Rev. Stat. 1965, ch. 110, par. 201.7; see *Kessler v. Lepiane,* 69 Ill. App. 2d 1; *Abron v. Public Pontiac, Inc.,* 64 Ill. App. 2d 73; see also *Darling v. Charleston Community Memorial Hospital,* 50 Ill. App. 2d 253, at 308; *River v. Atlantic & Pacific Tea Co.,* 31 Ill. App. 2d 232, at 239.) This rule contained provisions similar to those found in former Supreme Court Rule 39 which was then in effect (Ill. Rev. Stat. 1965, ch. 110, par. 101.39). These rules required that the propositions relied upon in support of the appeal be contained in the Points and Authorities section of the brief, and the rules limited the Argument section of the brief to the points listed under Points and Authorities. These rules further provided that a point raised but not argued may be considered waived. Thus, although a point was raised under Points and Authorities, if the point was not argued in the Argument section of the brief the court could consider the point waived.

Effective January 1, 1967, these provisions were deleted from the appellate court rules and the rules of this court were revised. The substance of former Appellate Court Rule 7 and former Supreme Court Rule 39 were incorporated in Supreme Court Rule 341. (36 Ill.2d R. 341.) Under this rule, it is not now required that the Points and Authorities consist of the propositions relied upon in support of the appeal, nor does this rule limit the Argument to points made in the Points and Authorities. Under the rule the Points and Authorities section is now to be derived from the Argument; that is, it is a summary statement of the points argued and the authorities cited in the Argument (36 Ill.2d R. 341(e)(5); see also Committee Comments to Rule 341, 36 Ill.2d R. 341, Committee Comments). Also the provisions of the former rules that a "point made but not argued may be considered waived" was changed to provide "Points not argued are waived and shall not be raised in the reply brief, oral argument, or on petition for rehearing" (36 Ill.2d R. 341(e)(7)). Thus,

under the present rule it is the content of the Argument in the appellant's brief which determines the propositions relied upon in support of the appeal.

In the present case, in the plaintiff-appellant's brief in the appellate court the sole proposition stated under Points and Authorities referred to the question of the hospital's failure to exercise its duty to review the medical care being given to the injured boy. Under former Rule 39, the content of the Argument would have been limited to this point, and other points not set forth under Points and Authorities would have been deemed waived. See *Varap v. Varap*, 76 Ill. App. 2d 402, 415; *In re Estate of Gersch*, 43 Ill. App. 2d 224, 227.

However, the present Rule 341(e)(7) provides only that points not *argued* are waived. We therefore look to the Argument to ascertain whether or not the question of the hospital's breach of its duty to adequately observe the patient's condition and to inform his doctor was raised in the appellate court. In the Argument in the appellant's brief in the appellate court the appellant cites *Darling v. Charleston Community Memorial Hospital*, 33 Ill.2d 326, and points out that in *Darling* both the question of the hospital's duty to observe the patient's condition and report it and the hospital's duty to review the treatment given to the patient by his doctor were involved. Although the first proposition was not discussed at length by the appellant, it was raised in the Argument and *Darling* was cited in support of and in fact supports both propositions. The appellee's brief responded by referring to specific evidence which it considered as supporting the directed verdict on this proposition, and the appellant in the reply brief in turn referred to evidence which, it is contended, would render the directed verdict on this issue erroneous. We consider that under the present rules of this court the issue of the hospital's breach of its duty to observe the condition of the patient and report changes therein to his doctor was raised in the Argument of the appellant's brief

in the appellate court and that that court should not have considered this issue waived.

This conclusion requires us to examine the evidence on this issue, viewing it in the aspect most favorable to the plaintiff to ascertain whether it so overwhelmingly favors Westlake Community Hospital that no verdict in favor of the plaintiff based on this evidence could ever stand. *Pedrick v. Peoria and Eastern R.R. Co.,* 37 Ill.2d 494.

The hospital records were admitted into evidence. The section of the records entitled "physicians' orders" contained an entry dated 5/7/65, the day Daniel was admitted: "Watch condition of toes." The order was signed by Dr. Bradley and also by Dr. Hubbard. Dr. Bradley testified that it is usually routine in such injuries for the nurses to check the circulation in the foot by watching the condition of the toes, but she nonetheless wrote the order because, "I wanted to be sure that it was understood that they should watch the toes very closely." She further testified that it is routine for the nurses to check the circulation of any seriously injured patient periodically, sometimes at two-hour intervals or sometimes at half-hour intervals.

The nurse who had been on duty until 11 p.m. on May 8, the night before the surgery was performed to remove the blood clot, stated that normally a nurse does not always record on the chart the observation every time the patient is checked. Usually only abnormal findings are charted. She entered in the hospital record at 10:30 p.m. that the toes were cool to touch, "Being observed closely. Asleep." Dr. Hubbard examined Daniel about 11 p.m. that evening and performed certain tests for circulation which indicated to him that there was adequate circulation. The color of his leg was not cyanotic; that is, not "purplish blue hue, like you get when you occlude your circulation in the hand." The foot and leg were not swollen and the temperature of the limb felt normal. The doctor noted a loss of sensation in the foot. Since he thought that there

was adequate circulation in the foot he considered the possibility of an injury to a nerve and he consulted a neurosurgeon.

Following the 11 p.m. visit of Dr. Hubbard on May 8, the "nurses' notes" in the hospital records for "Sunday, May 9, 1965," contain the following entries:

"12:30 Unable to sleep. Milk given.
 1:30 Awake—med. given for pain.
 6:00 A good night—states he feels better. Left foot is cold—color is dusky—appears to have no feeling in foot. Dr. Hubbard notified."

Dr. Hubbard testified that as soon as he received the call from the nurse at about 6 a.m. he went directly to the hospital, examined Daniel, removed the traction and prepared for exploratory surgery to ascertain the cause of the loss of circulation in the foot. The surgery revealed a clotting in the femoral artery.

The nurse who was on duty from 11 p.m. on May 8, until 7 a.m. on May 9, did not testify. As indicated above, another nurse testified concerning the custom of not always making a record of every observation of a patient unless abnormal. However, the nurses' notes for the same period the previous night, that is, 11 p.m. May 7 through 7 a.m. May 8, contain several entries concerning the circulation which do not reflect abnormal findings. For instance, on May 8 at 1 a.m. the nurses' notes state: "Toes cold but color good"; at 2 a.m.: "circulation appears good"; at 3 a.m.: "circulation appears O.K."

There is no evidence in the record of this case that the circulation in Daniel's foot was observed by the nurse on duty at any time between 11 p.m. May 8 and 6 a.m. on May 9. Dr. Hubbard testified as to very definite evidence of adequate circulation when he examined Daniel at 11 p.m. By 6 a.m. the next morning Daniel's condition had become very serious. This serious change in condition; the doctor's orders to "Watch condition of toes"; the 10:30 p.m. entry by the nurse who went off duty "Being

observed closely"; and the failure by the nurse who was on duty during the crucial period to make any entry of observations that she made concerning the circulation in Daniel's foot, all could very well have led the jury to draw the inference that no such observations were made between 11 p.m. and 6 a.m. As this court stated in *Darling:*

> "On the basis of the evidence before it the jury could reasonably have concluded that the nurses did not test for circulation in the leg as frequently as necessary, that skilled nurses would have promptly recognized the conditions that signalled a dangerous impairment of circulation in the plaintiff's leg, and would have known that the condition would become irreversible in a matter of hours." (33 Ill.2d 326, 333.)

Although Dr. Hubbard testified that in his opinion the nurses had kept him adequately informed of Daniel's condition, in view of the other evidence from which the jury could have drawn a contrary inference the trial court should not have directed a verdict in favor of the hospital at the close of the plaintiff's case.

The judgment of the appellate court affirming the circuit court of Cook County's judgment in favor of Westlake Community Hospital is reversed and this cause is remanded to the circuit court of Cook County for a new trial. *Reversed and remanded.*