LOVIE JOHNSON, Adm'r of the Estate of Samuel Johnson, Deceased, Plaintiff-Appellant, *v.* ST. BERNARD HOSPITAL, Defendant-Appellee.—(DR. ISAAC THAPEDI, Defendant.)

First District (4th Division) No. 78-1377

Opinion filed December 20, 1979.

Mitgang, Levine & Schwartz, of Chicago (Carl Nusbaum and John B. Schwartz, of counsel), for appellant.

Wildman, Harrold, Allen & Dixon, and Hinshaw, Culbertson, Moelmann, Hoban & Fuller, both of Chicago (Thomas D. Allen, Miles J. Zaremski, William D. Serwer, D. Kendall Griffith, John D. Cassiday, and James R. Pancheri, of counsel), for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiff, Lovie Johnson, administrator of the estate of Samuel Johnson, brought this survival and wrongful death action against defendants, Dr. Isaac Thapedi and St. Bernard Hospital, based on defendants' alleged negligent care and treatment of plaintiff's intestate. The circuit court of Cook County granted summary judgment in favor of defendant St. Bernard Hospital. Plaintiff appeals, contending that material questions of fact exist which preclude the entry of summary judgment and that the hospital is not entitled to summary judgment as a matter of law.

We reverse the judgment of the trial court and remand the case for additional proceedings.

On November 4, 1974, Samuel Johnson was injured when struck by an automobile. He was taken to the emergency room at St. Bernard Hospital where he was examined by Dr. Gilberto Arevalo and treated for a head injury. Johnson was then admitted to the hospital under the care of

defendant Dr. Isaac Thapedi, a staff neurosurgeon. Two days after the accident, on November 6, 1974, Johnson was examined by a physician who was identified by Dr. Thapedi as Dr. Drumright, a house physician employed by the hospital to take histories and give physical examinations.

On January 14, 1975, approximately 2½ months after admission to the hospital, it was discovered that Johnson was suffering from an intertrochanteric fracture of the left hip. After discovering the fracture, Dr. Thapedi requested orthopedic consultation from Dr. Allen Wright, an orthopedic surgeon on the staff of St. Bernard Hospital and chairman of the department of orthopedics at the hospital. Dr. Wright refused to see Johnson in consultation for Dr. Thapedi.

After Dr. Wright refused to see his patient, Dr. Thapedi, in compliance with the hospital bylaws, advised the hospital administration that Dr. Wright refused to see Johnson. St. Bernard Hospital bylaw 14 provides:

> "Urgent consultation shall be answered within 24 hours from the time requested, and all other consultations shall be answered within 48 hours. After 48 hours if consultation is not answered, administration shall be notified."

The administration told Dr. Thapedi that it had no authority to force Dr. Wright to see his patient and suggested that Dr. Thapedi obtain an orthopedic consultation from outside the hospital. Johnson remained in the hospital until his death on February 14, 1975, one month after discovery of the fracture and without having been examined by an orthopedic surgeon.

Plaintiff filed this action on February 10, 1976. With regard to the hospital, the amended complaint alleged that Johnson's aggravated injuries and eventual death were the proximate result of one or more of the following negligent acts:

> "(a) Failed to have proper emergency room care given to a patient;
> (b) Contrary to its rules and regulations, failed to insure that the patient got prompt and adequate attention;
> (c) Contrary to its rules and regulations, failed to have proper and adequate orthopaedic consultation."

The hospital answered the amended complaint, denying that it had been negligent in the care and treatment of Johnson.

On January 18, 1978, plaintiff's qualified medical expert, Dr. Farag Loutfy, gave his discovery deposition. Dr. Loutfy had reviewed the hospital medical records concerning Johnson's care and treatment, copies of certain hospital bylaws, and Dr. Thapedi's deposition. Dr. Loutfy explained that Johnson's intertrochanteric hip fracture was undoubtedly caused by the initial trauma of the automobile accident. A classic characteristic of this type of hip fracture is an externally rotated or

everted leg. When the leg is manipulated during examination, it will flop back into the everted position.

The first aspect of Johnson's care and treatment criticized by Dr. Loutfy was the initial examination performed by the emergency room physician, Dr. Arevalo. In Dr. Loutfy's opinion, a thorough examination of Johnson's lower limbs, including X ray of the hips, was called for because of the manner in which Johnson had sustained his injuries. During a thorough examination, Dr. Loutfy stated the physician should have noticed the everted position of the leg and discovered the fracture.

Dr. Loutfy also discussed a physical examination conducted on November 6, 1974, two days after Johnson was admitted to the hospital. According to the deposition of Dr. Thapedi, this examination was performed by Dr. Drumright, a house physician. From his evaluation of the hospital medical records, Dr. Loutfy indicated that the examining physician apparently failed to completely examine the patient's lower extremities or notice the everted position of Johnson's leg.

Finally, Dr. Loutfy discussed the failure of the treating physician and the hospital to secure consultation of an orthopedic surgeon after Johnson's hip fracture was diagnosed on January 14, 1975. Referring to St. Bernard Hospital bylaw 14, Dr. Loutfy stated that the hospital administration should have insured that an orthopedic consultation was obtained in Johnson's case. With regard to the hospital's duty to obtain a consultation for the patient, Dr. Loutfy stated:

"A. My only criticism is the fact that there, we have a patient lying in the hospital with a problem for so long, and when it was discovered, there is nothing done about it, because No. 1, the physician that was asked for consultation declined it several times. No. 2, another orthopedic man was not consulted. No. 3, the administration sat there without doing something about it.

\* \* \*

THE WITNESS: I say it is the responsibility of the hospital administration to see to it that an orthopedic consultation is done when requested, for the well-being of the patient, if not for anything else.

MR. ZAREMSKI: Q. Do you know whether there's a standard of care in this community?

A. That is true.

Q. How do you know that?

A. And that is why.

Q. Doctor, just answer my question, please.

A. Yes, I do.

Q. From where do you know that?

A. From the bylaws of every hospital I know of.

\* \* \*

Q. Doctor, in 1974 and 1975, did you know for a fact that it's the duty of the hospital administration to insure that consultations are given or rendered when an attending physician requests it?

A. Yes, I do.

Q. And once again, I'm asking you, how do you know that for a fact?

A. Because of the bylaws.

Q. Of which hospital?

A. Of Lutheran General Hospital.

\* \* \*

Q. Are you telling us now that the criticism that you're rendering against St. Bernard is based upon what Lutheran General requires of its doctors, as reflected in the bylaws?

A. That's right."

It was Dr. Loutfy's conclusion that the cause of Johnson's death was pulmonary embolism caused by thrombophlebitis of the limb, resulting from lack of movement and possibly from increased pressure of hematoma in the area of the fracture.

Shortly after taking Dr. Loutfy's deposition, defendant St. Bernard Hospital moved for summary judgment. Count I of the two-count motion for summary judgment was based on the grounds that Dr. Arevalo, the emergency room physician, was neither employed nor paid by the hospital. An attached affidavit of the hospital's senior vice-president stated that Dr. Arevalo was not an employee of the hospital on November 4, 1974. Count II alleged that Dr. Loutfy had failed to establish a recognized standard of care with regard to the hospital or show a deviation from the standard of care. In support of this contention, the hospital relied on the deposition of Dr. Loutfy.

Plaintiff responded to the hospital's motion for summary judgment and the hospital replied to plaintiff's response. After a hearing was held on the motion, the trial court entered an order on April 20, 1978, granting summary judgment in favor of the hospital on both grounds raised in its motion. Plaintiff then filed a motion to vacate the award of summary judgment and attached the affidavit of Dr. Loutfy. In this affidavit, Dr. Loutfy stated, "[T]he failure of the administrator at St. Bernard Hospital to make any effort to exercise his authority under the above by-laws to get the orthopod to comply with his obligations under the above by-laws was clearly below the standard of care as it existed in 1974 and 1975 for good hospital practice." Plaintiff's motion was denied and she appeals pursuant

to Supreme Court Rule 304(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a)).

OPINION

■■ A motion for summary judgment should only be granted where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1977, ch. 110, par. 57.) In determining whether a genuine issue as to any material fact exists, the court must construe the pleadings, depositions, and affidavits most strictly against the movant. (*Kolakowski v. Voris* (1979), 76 Ill. App. 3d 453, 395 N.E.2d 6.) A triable issue precluding summary judgment exists where there is a dispute as to material facts, or where, the material facts being undisputed, reasonable persons might draw different inferences from the facts. (*Ruby v. Wayman* (1968), 99 Ill. App. 2d 146, 240 N.E.2d 699.) Accordingly, the right to summary judgment must be clear and free from doubt. *Patterson v. Stern* (1967), 88 Ill. App. 2d 399, 232 N.E.2d 7.

I

In granting summary judgment in favor of the hospital, plaintiff first contends the trial court erroneously ruled that as a matter of law the hospital could not be held vicariously liable for the alleged negligent conduct of the emergency room physician, Dr. Arevalo.

■■ As a general rule, the decision to treat a patient in a particular matter is a medical question entirely within the discretion of the treating physician, not the hospital, and the negligence of a physician in the treatment of a patient can not be imputed to the hospital where the physician is not an agent or under the direction of the hospital. (See *Collins v. Westlake Community Hospital* (1973), 12 Ill. App. 3d 847, 299 N.E.2d 326, *rev'd on other grounds* (1974), 57 Ill. 2d 388, 312 N.E.2d 614; *Lundahl v. Rockford Memorial Hospital Association* (1968), 93 Ill. App. 2d 461, 235 N.E.2d 671; but see Kahn, *Hospital Malpractice Prevention,* 27 DePaul L. Rev. 23 (1977).) Moreover, although a hospital may be liable for injuries to a patient caused by the negligence of its agents or employees (*Foster v. Englewood Hospital Ass'n* (1974), 19 Ill. App. 3d 1055, 313 N.E.2d 255), traditionally, it has been held that a hospital is not liable for acts of one who renders medical care as an independent agent outside the control of the hospital. *Hundt v. Proctor Community Hospital* (1972), 5 Ill. App. 3d 987, 284 N.E.2d 676; *Stein v. Baum* (1967), 89 Ill. App. 2d 142, 232 N.E.2d 96.

In her complaint, plaintiff alleged that the hospital "failed to have proper emergency room care given to [the] patient." However, the only

criticism plaintiff's expert made with regard to the care and treatment Johnson received in the emergency room was the failure of the treating physician to thoroughly examine the patient and obtain X rays of the hip area. Plaintiff's expert neither complained that the hospital failed to properly select or supervise the emergency room physician, nor that the staff failed to carry out Dr. Arevalo's orders, nor deprecated the quality of the nursing care or the facilities in the emergency room. His sole criticism related to matters within the medical judgment of the emergency room physician.

Additionally, it is undisputed, as alleged in the hospital's motion for summary judgment and supporting documents, that the emergency room physician was not employed or paid by the hospital. Thus, Dr. Arevalo did not have the necessary employer-employee or principal-agent relationship with the hospital required to impose vicarious liability on a respondeat superior theory. See generally *Garfield Park Community Hospital v. Vitacco* (1975), 27 Ill. App. 3d 741, 327 N.E.2d 408.

Plaintiff argues that in the absence of a principal-agent relationship the hospital may be held liable for the acts of an independent contractor who carries out functions statutorily required of the hospital. In support of this theory, plaintiff relies on a provision of "An Act requiring hospitals to render hospital emergency service ° ° °" (Ill. Rev. Stat. 1977, ch. 111½, par. 86), stating that every licensed hospital "which provides general medical and surgical hospital services shall provide a hospital emergency service." We disagree that this provision is sufficiently broad to impose upon the hospital the duty to assume responsibility for the practice of medicine within an independently operated emergency room facility. For these reasons, the trial court correctly held that the hospital could not be held liable for the acts of the emergency room physician.

## II

A related question is raised by Dr. Loutfy's criticism of the physical performed two days after Johnson was admitted to the hospital. According to the deposition testimony of Dr. Thapedi, offered in opposition to the hospital's motion for summary judgment, the November 6, 1974, physical was performed by Dr. Drumright, a house physician or semiresident, who was employed by the hospital to conduct general physical examinations and take patient histories.

As previously discussed, a hospital may be held liable for the negligent acts of its employees and agents. (See *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204; *Foster v. Englewood Hospital Association* (1974), 19 Ill. App. 3d 1055, 313 N.E.2d 255.) It follows that in some instances a hospital may be held liable for the

negligent medical judgment of a physician who is employed and salaried by the hospital and who works under the direction of the hospital staff. See generally *Moeller v. Hauser* (1952), 237 Minn. 368, 54 N.W.2d 639; Annot., 69 A.L.R. 2d 305 (1960).

■ Dr. Drumright is a mysterious character in the record. The hospital did not address the question of Dr. Drumright in its motion for summary judgment or in its brief on appeal. There is a reference in the report of proceedings before the trial court to an affidavit concerning Dr. Drumright's status at the hospital, but no such affidavit is contained in the record on appeal. In fact, the record does not contain any evidence which would contradict Dr. Thapedi's statement that Dr. Drumright was employed by the hospital. We agree with plaintiff that the record at present does not establish Dr. Drumright's status at the hospital with regard to the care and treatment of Samuel Johnson. This factual issue remains to be resolved at trial and precludes summary judgment in favor of the hospital.

## III

Finally, we consider whether plaintiff established a recognized standard of care against which the conduct of the hospital can be judged. Plaintiff argues the hospital bylaws and the medical opinion of Dr. Loutfy established that the hospital had a duty to assist Dr. Thapedi in obtaining an orthopedic consultation for his patient and that the hospital failed to use reasonable efforts to provide the needed orthopedic consultation.

■■ ■ A hospital is under a duty to conform to the legal standard of reasonable conduct in light of the apparent risk. (*Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, 303 N.E.2d 392; *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204.) A hospital is not an insurer of a patient's safety, but it owes him a duty of protection and it must exercise a degree of reasonable care towards him as his known condition requires. (*Slater v. Missionary Sisters of the Sacred Heart* (1974), 20 Ill. App. 3d 464, 314 N.E.2d 715.) A plaintiff must prove that the hospital failed to comply with the standard of proper care which guides institutions holding themselves out as devoted to the care and saving of human life, and that this failure resulted in the injury complained of. *Scardina v. Colletti* (1965), 63 Ill. App. 2d 481, 211 N.E.2d 762.

Illinois courts recognize that a hospital can be charged with direct negligence in failing to review and, in certain instances, supervise the medical care being given a patient under a doctor's care within the hospital. *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d

209, 86 S. Ct. 1204; the seminal case in this area, involved an action to recover for the loss of a patient's leg, amputated as a result of a constricting cast. The plaintiff sued the hospital alleging that it was negligent in permitting the attending physician to do the orthopedic work required by the patient's condition, in not requiring the physician to update his operative procedures, in failing, through its medical staff, to exercise adequate supervision in the case, in not requiring consultation, particularly after complications developed, in the failure of its nurses to check and report the patient's condition, and in the failure of the staff to take action when the patient's condition was made known to it.

The plaintiff in *Darling* contended that the regulations, standards and hospital bylaws introduced defined the hospital's duty to its patient. The defendant hospital argued that since only a licensed physician can practice medicine, the hospital was powerless to supervise the practice of medicine within its confines. In short, it was the hospital's position that its duty to the patient was fulfilled when it placed the patient under the care of a competent physician.

In resolving the issue of hospital negligence in favor of the plaintiff, the court in *Darling* first determined that regulations, standards and bylaws were admissible on the issue of the standard of care which the hospital owes its patient. (See also *Eckley v. St. Therese Hospital* (1978), 62 Ill. App. 3d 299, 379 N.E.2d 306.) The bylaws performed the same function as evidence of custom and practice. Although the bylaws did not conclusively determine the standard of care, they were evidence of the responsibility which the hospital assumed for the care of the patient. The court went on to conclude that plaintiff had introduced sufficient evidence of defendant hospital's failure to comply with its bylaws to allow a jury to find the hospital negligent.

The arguments raised in this case parallel those decided in *Darling*. Plaintiff contends that the hospital bylaws coupled with the testimony of Dr. Loutfy established the applicable standard of care and the hospital's failure to meet it. The hospital argues that obtaining a consultation for a patient is a medical question solely within the province of the licensed physician.

On the issue of the hospital's standard of care, plaintiff relies on the hospital's bylaws which require that the administration be notified if a request for consultation in a nonemergency situation is not answered within 48 hours. The bylaws impose an obligation on all physicians granted staff privileges to comply with requests for consultation and grant the administration authority to take corrective action whenever the professional conduct of a staff physician is considered lower than the standards or aims of the medical staff or whenever action must be taken immediately in the best interests of patient care. Despite the bylaw's

directive that the administration be notified of a physician's failure to consult, after being notified that Dr. Wright refused to see Johnson, the hospital administration advised Dr. Thapedi that it could not require Dr. Wright to consult with him and suggested that Dr. Thapedi seek a consultation outside the hospital.

■■ Read together, we believe that the hospital bylaws impose a duty upon the hospital to use reasonable efforts to assist physicians on its staff in obtaining consultations from other staff physicians. This conclusion does not require the hospital administration to engage in the practice of medicine. The medical decision is made by the attending physician when he or she determines that a consultation is necessary and requests a fellow physician to render a consultation. (*Cf. Lundahl v. Rockford Memorial Hospital Association* (1968), 93 Ill. App. 2d 461, 466-67, 235 N.E.2d 671, 674.) It requires not medical expertise, but administrative expertise, to enforce rules and regulations which were adopted by the hospital to insure a smoothly run hospital routine and adequate patient care and under which the physicians have agreed to operate.

The hospital's duty to the patient is also evident from the statements of Dr. Loutfy. He testified that the hospital administration had a responsibility to ensure that orthopedic consultation is done when requested for the well being of the patient. The standard to which the hospital is held is the accepted standard of care in the medical community. (See *Crawford v. Anagnostopoulos* (1979), 69 Ill. App. 3d 954, 387 N.E.2d 1064.) Although in his deposition Dr. Loutfy indicated that his conclusion was based on his personal experience with the bylaws of the hospital with which he was associated, the defendant's bylaws are themselves evidence of the standard of care customarily offered by hospitals in the community. Furthermore, in the affidavit submitted with plaintiff's motion to vacate the award of summary judgment, Dr. Loutfy stated that the hospital's inaction in this case was clearly below the standard of care for good hospital practice.

■■ Keeping in mind that the issue of negligence is ordinarily and pre-eminently a question of fact for the jury (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 117 N.E.2d 74; *Johnson v. Princeville Community High School District 206* (1965), 65 Ill. App. 2d 487, 212 N.E.2d 755), we hold that the hospital bylaws and the medical testimony of Dr. Loutfy establish that the hospital had a duty to use reasonable efforts to assist Dr. Thapedi in obtaining an orthopedic consultation. Thus, the pleadings, depositions and affidavits on file in this case create an issue of fact as to whether the hospital discharged that duty to its patient.

Because this case raises questions of fact for a jury's determination at trial, the summary judgment in favor of defendant St. Bernard Hospital was improperly awarded. Accordingly, the judgment of the circuit court

is reversed, and the cause is remanded for proceedings consistent with this opinion.

Reversed and remanded.

JIGANTI, P. J., and ROMITI, J., concur.