MARJORIE BARBOUR, Plaintiff-Appellant, v. SOUTH CHICAGO COMMUNITY HOSPITAL, Defendant-Appellee (Lester Davis *et al.*, Defendants).

First District (4th Division)   No. 86—1162

Opinion filed May 21, 1987.

Barclay, Damisch & Sinson, Ltd., of Chicago (Junie L. Sinson and Thomas J. Swabowski, of counsel), for appellant.

Cassiday, Schade & Gloor, of Chicago (John D. Cassiday, Dennie A. Ferraro, and Mary Lynn Colnar, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff Marjorie Barbour brings this appeal seeking reversal of a trial court's order dismissing counts VI, VII, IX, and X of her 13-count, fifth amended complaint. Barbour filed her complaint after she discovered that an unauthorized tubal ligation had been performed on her in 1967 while she was a patient at defendant South Chicago Community Hospital (the hospital). Each of the dismissed counts relates to conduct allegedly committed by the hospital. Count VI sounds in battery, count VII asserts the reasons why Barbour discovered her injury on October 30, 1980 (13 years after the alleged battery), count IX is a negligence action combined with an equitable estoppel theory, and count X, like count VII, describes how Barbour came to discover the injury resulting from the hospital's alleged conduct.

Pursuant to the hospital's motion, the trial court dismissed the four counts set forth above. The trial court found that the hospital could not be held responsible for the acts complained of in light of the fact that no agent of the hospital participated in the performance of those alleged acts. The trial court further found that the hospital could not be equitably estopped from raising the statute of limitations (Ill. Rev. Stat. 1981, ch. 110, par. 13—212) as a defense. That being the case, the trial court dismissed counts VI, VII, IX, and X as being barred by the applicable statute of limitations.

Barbour now brings this appeal contending: (1) that the trial court erred in failing to find that her complaint alleges an agency relationship sufficient to bind the hospital, and (2) that an issue of fact exists as to whether the hospital should be equitably estopped from raising the statute of limitations.

We affirm.

BACKGROUND

This appeal is before us following the trial court's ruling that counts VI, VII, IX, and X of Barbour's fifth amended complaint fail to state a cause of action under Illinois law. Accordingly, we must accept as true all of the well-pled allegations in those counts and must draw all reasonable inferences in Barbour's favor. *Cook v. Askew* (1975), 34 Ill. App. 3d 1055, 1057, 341 N.E.2d 13.

Count VI of Barbour's complaint reveals that Barbour was a patient at the hospital from July 26, 1967, to August 7, 1967. Barbour entered the hospital to have an abortion performed. At that time, Barbour claims that three physicians, Drs. Harrod, Kolokoff, and Anderson, secretly agreed not only to perform the abortion requested by Barbour, but also to perform a tubal ligation. The physicians did

not inform Barbour of their decision to perform the tubal ligation, and Barbour alleges that at no time did she consent to the performance of said tubal ligation.

Count VI specifically sounds in battery and in equitable estoppel. The battery action alleges that the hospital, through its agents, intentionally performed the tubal ligation on Barbour without obtaining her consent. The equitable estoppel theory charges that one of the hospital's student nurses, Eileen August, and the chief of the hospital's obstetrics and gynecology department, Dr. Harrod, intentionally concealed the performance of the tubal ligation from Barbour. Count VI further contends that August and Harrod agreed prior to the tubal ligation to conceal it from Barbour; that subsequent to the tubal ligation, August perpetuated that concealment by assisting Barbour in obtaining a birth control device even though August knew in fact that the device was unnecessary in light of Barbour's previous tubal ligation; and that in 1973, Harrod furthered the concealment by again assuring Barbour that she was fertile even though he knew of the previously performed tubal ligation.

Barbour claims in count VI that she first learned of the tubal ligation on October 30, 1980. It is Barbour's position that the hospital should be equitably estopped from raising the statute of limitations defense in light of August and Harrod's intentional concealment of the tubal ligation previously performed on Barbour. August was one of the hospital's student nurses (who was not paid a salary by the hospital), and Harrod was a department chief who was appointed to his position by the hospital's board of directors. As a department chief, Harrod was responsible for monitoring, controlling, and assisting in patient care and quality in the hospital's obstetrics and gynecology department.

Count VII sets forth the events which led to Barbour's discovery of the tubal ligation. Barbour asserts that she finally learned of the tubal ligation when Dr. Davis (also a defendant in this lawsuit) admitted that he was aware that a tubal ligation had been performed upon Barbour while she was a patient in the hospital in 1967. Davis was Barbour's family physician at the time of the incident in 1967.

Count IX sounds in negligence. Count IX charges, *inter alia*, that the hospital was negligent in that it failed to limit the surgery performed to that which the plaintiff had consented to (namely, an abortion); failed to properly inform Barbour of the extent of the surgery that was going to be performed upon her; failed to properly protect the plaintiff while she was under anesthesia; failed to properly train its nurses; and failed to inform Barbour of the surgery actually per-

formed upon her. Count IX also claims that the hospital should be equitably estopped from raising the statute of limitations defense.

Count X is similar to count VII in that it merely sets forth the circumstances which led to Barbour's discovery of the tubal ligation.

The hospital moved the trial court to dismiss counts VI, VII, IX, and X as being barred by the applicable statute of limitations. The trial court subsequently granted the hospital's motion, prompting Barbour to bring this appeal.

OPINION

I

In addition to the issues relating to the alleged principal-agent relationship and the equitable estoppel theory, Barbour claims that the trial court erred in dismissing her third and fourth amended complaints. The trial court previously dismissed Barbour's third and fourth amended complaints but allowed Barbour leave to amend. In Barbour's fifth amended complaint, several counts contained in the third and fourth amended complaints were not repled. On appeal, Barbour urges us to reverse the trial court's decision dismissing her third and fourth amended complaint.

■ It is well established that a party who files an amended complaint waives any objection to the trial court's ruling on the former complaints. (*Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 153, 449 N.E.2d 125.) Thus, by filing a fifth amended complaint, Barbour waived those objections she now attempts to raise on appeal. Accordingly, the only issues before this court relate to the allegations contained in Barbour's fifth amended complaint.

II

Barbour next contends that the trial court erred in ruling that her complaint fails to sufficiently allege a principal-agent relationship between the hospital and Harrod.

The hospital argues that Harrod was not a paid employee of the hospital and that, as a result, the hospital cannot be vicariously liable for Barbour's injury, for no principal-agent relationship existed. Barbour, on the other hand, asserts that a question of fact exists as to whether Harrod was indeed an agent of the hospital. Barbour argues that even though Harrod did not receive compensation from the hospital, nevertheless, he acted under the direction of the hospital. Barbour points out that Harrod was appointed by the hospital's board of

directors to the position of department chief and that he alone was authorized by the hospital's board to monitor, control, and assist in patient care and quality within the obstetrics and gynecology department. That being the case, Barbour charges that Harrod's status within the hospital's hierarchy is at least uncertain and that the trial court erred in dismissing her action on the pleadings alone.

■ It is well settled that a hospital may be held vicariously liable for the negligent acts of its employees and agents. (*Pickle v. Curns* (1982), 106 Ill. App. 3d 734, 738, 435 N.E.2d 877; *Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 714, 399 N.E.2d 198.) As this court noted in *Johnson*:

> "As a general rule, the decision to treat a patient in a particular manner is a medical question entirely within the discretion of the treating physician, not the hospital, and the negligence of a physician in the treatment of a patient cannot be imputed to the hospital where the physician is not an agent or under the direction of the hospital." 79 Ill. App. 3d 709, 714, 399 N.E.2d 198.

Illinois courts have distinguished between those persons who are paid by or receive a stipend from the hospital from those practitioners who utilize hospital facilities but who do not receive compensation from the hospital. (See, *e.g., Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 399 N.E.2d 198.) In the former situation, a principal-agent relationship exists, whereas in the latter, no such connection is generally found to be present.

With regard to the facts alleged in Barbour's complaint, no Illinois court has directly addressed whether a department chief is an agent of the hospital. However, in *Simmons v. St. Clair Memorial Hospital* (1984), 332 Pa. Super. 444, 481 A.2d 870, the Pennsylvania Appellate Court discussed that exact issue. In *Simmons*, the physician involved was not paid a salary by the hospital. The physician was, however, chairman of a department and was responsible for resolving problems that developed with regard to patient care within that department. Based on this evidence, the *Simmons* court determined that a question of fact existed as to whether a principal-agent relationship existed between the physician and the hospital even though the physician was not an actual paid employee. (332 Pa. Super. 444, 452, 481 A.2d 870, 874.) The determinative factor, as seen by the *Simmons* court, was the relationship existing between the department chairman and the hospital.

Likewise, in the present case, Barbour alleges that Harrod did in fact have an on-going relationship with the hospital itself. According

to Barbour's complaint, she asserts that Harrod was responsible for the obstetrics and gynecology department and that he acted pursuant to the board of directors' orders. The clear inference to be drawn is that the hospital's board had control over Harrod, for the board could have removed Harrod from his position if he failed to perform his duties properly. It is also evident that any decision by the board to change policy or practice in the obstetrics and gynecology department would have to be implemented by the board through Harrod. Consequently, unlike a typical physician whose relationship with a hospital constitutes merely a necessary outgrowth of his relationship with his patient, Harrod had a recognized and continuous association with the hospital itself. To this extent, Harrod is allegedly not an independent contractor but was rather the board's representative within the obstetrics and gynecology department. Thus, unlike a physician who is an independent contractor and thus beyond the control of the hospital (see *Pickle v. Curns* (1982), 106 Ill. App. 3d 734, 435 N.E.2d 877), Harrod was, at least according to Barbour's complaint, acting within the purview, and under the authority, of the hospital's board of directors.

■■ ■ It is well settled that where there is some dispute as to the extent of the parties' relationship, the existence and scope of an agency relationship are questions of fact for the jury to decide. (*Milwaukee Mutual Insurance Co. v. Wessels* (1983), 114 Ill. App. 3d 746, 749, 449 N.E.2d 897.) In the case at bar, while it is true that Harrod is not a paid employee of the hospital, we nevertheless believe that his role as department chairman prohibits us from ruling that he was not, as a matter of law, an agent of the hospital. Rather, the resolution of that matter is a question that would be best left for a fact finder.

The authorities cited by the hospital (*Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 399 N.E.2d 198; *Hundt v. Proctor Community Hospital* (1972), 5 Ill. App. 3d 987, 284 N.E.2d 676; *Garfield Park Community Hospital v. Vitacco* (1975), 27 Ill. App. 3d 741, 327 N.E.2d 408) are distinguishable from the case at bar. In each case, the conduct sought to be charged to the hospital involved independent medical decisions as to the appropriate means of treating a patient. The physicians involved had no legal relationship with the respective hospitals other than the right to use the hospital's facilities in rendering treatment to a patient. The physicians did not work under the direction or control of the hospital and as such, were independent contractors rather than agents of the hospitals.

In the instant case, on the other hand, Harrod is alleged to have worked under the direction of the hospital's board of directors. The

board appointed Harrod and it was Harrod who was acting on behalf of the board as chairman of the obstetrics and gynecology department. Harrod's activities were, therefore, allegedly within the control of the board. That being the case, we are unable to agree with the trial court that Harrod's status can be determined as a matter of law.

## III

■ However, even if Harrod could be found to be an agent of the hospital, it does not necessarily follow that the hospital, as a principal, is equitably estopped from raising the statute of limitations defense.

Barbour claims that the trial court erred in ruling that the hospital is free to rely on the statute of limitations defense as a means to bar Barbour's complaint. Barbour asserts that it was Harrod's conspiracy which caused her to believe that her fallopian tubes were undamaged and that she filed her lawsuit immediately upon learning her true physical status. The hospital responds to Barbour's argument by contending that the hospital had no notice of and did not participate in Harrod's activities and that, as a result, the hospital cannot be barred from raising the statute of limitations defense.

Section 13—215 of the Illinois Code of Civil Procedure provides:

"If a person liable to an action fraudulently conceals the cause of action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." Ill. Rev. Stat. 1983, ch. 110, par. 13—215.

Under Illinois law, a principal is not estopped from raising the statute of limitations as a defense unless the principal knew, or participated in, the concealment alleged to have been committed by the agent. *Wood v. Williams* (1892), 142 Ill. 269, 280-81, 31 N.E.2d 681; *Chicago Park District v. Kenroy, Inc.* (1980), 78 Ill. 2d 555, 563, 402 N.E.2d 181.

■ In the present case, Barbour has failed to allege that any individual beyond Harrod and August (and several other physicians who are in no way related to the hospital) knew or participated in the alleged conspiracy. Barbour does not allege that the hospital's board of directors knew of the alleged conspiracy nor does Barbour claim that any other department chief was aware of the alleged conspiracy. Instead, Barbour attempts to hold the hospital, as principal, liable for an agent's alleged concealment of a cause of action. However, Illinois courts, including the supreme court, have refused to expand the doctrine of equitable estoppel set forth in section 13—215 to include an

unknowing principal. (See *Wood v. Williams* (1892), 142 Ill. 269, 31 N.E.2d 681; *Chicago Park District v. Kenroy, Inc.* (1980), 78 Ill. 2d 555, 402 N.E.2d 181.) We must therefore agree with the trial court that the hospital is not estopped from raising the statute of limitations as a defense and that Barbour's claim against the hospital is time barred.

CONCLUSION

Accordingly, for the reasons set forth above, the ruling of the circuit court of Cook County dismissing counts VI, VII, IX, and X of Barbour's fifth amended complaint is affirmed.

Affirmed.

McMORROW, P.J., and JIGANTI, J., concur.