GABRIELLE SMITH, a Minor by Linda Smith, her Mother and Next Friend, *et al.*, Plaintiffs-Appellants, v. VICTORY MEMORIAL HOSPITAL, Defendant-Appellee.

Second District    No. 2—87—0472

Opinion filed March 16, 1988.

Kiesler & Berman, of Chicago (John R. Garofalo, of counsel), for appellants.

Stephen R. Swofford and H. Anne McKee, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Michael F. Henrick, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Charles and Linda Smith and their minor daughter, Gabrielle, filed suit against Victory Memorial Hospital, alleging that Gabrielle was permanently injured when she experienced a period of oxygen deprivation prior to her birth at the hospital on January 19, 1979. The plaintiffs alleged that hospital personnel failed to detect the hypoxic episode (period of diminished oxygen supply) and to prevent the resulting brain damage to Gabrielle because they were not properly monitoring her fetal heart rate during her mother's labor. Victory Memorial denied those allegations and contended that Gabrielle's mental retardation resulted from an unknown condition or event not related to the birth process. The jury returned a verdict in favor of the defendant, from which plaintiffs appeal.

I

Plaintiffs' first contention is that the trial court erred in refusing their request to permit the jury to view Linda Smith's labor progress chart, a medical record apparently made and kept by the hospital, and in refusing to permit the jury to take the chart into the jury room.

Nurse Eileen Collins, who was the obstetric nurse in charge at Victory Memorial when Gabrielle was delivered, was called as a witness for plaintiffs. She testified from the labor progress chart for January 19, 1979, by reading and explaining the notations she and another nurse had made on it. After Collins' testimony, plaintiffs offered the chart in evidence, and the court admitted it without objection by the defendant. Immediately afterward, however, when plaintiffs sought to introduce an enlargement of the chart, the defense attorney argued that the chart was admissible only to the extent that it had served as Collins' past recollection recorded. He argued that because Collins testified that she did not know who had made certain notations at the top of the chart, the chart was hearsay with regard to those entries and therefore ought not to be viewed by the jury or taken into the jury room. The court sustained defendant's objection, and neither document (the chart or the enlargement of it), though both were admitted into evidence, was shown to the jury or taken into the jury room.

Plaintiffs argue that the court's ruling improperly prevented the jury from seeing for itself that the hospital had provided spaces on the chart for recording the fetal heart rate every 15 minutes, but that Collins had only recorded the rate twice during the 3½ hour period just before Gabrielle's birth. Relying on *Collins v. Westlake Community Hospital* (1974), 57 Ill. 2d 388, plaintiffs argue that the jury was

entitled to infer from the absence of other recordings that the heart rate was not observed at any other time during that period.

■■ Supreme Court Rule 236(a) (107 Ill. 2d R. 236(a)) facilitates the admission into evidence of records made in the regular course of business. Hospital records are excluded from that rule, however (107 Ill. 2d R. 236(b)), and may be admitted under the business records exception to the hearsay rule only if the proponent calls as a witness every person who made entries on those records (see *Mayer v. Baisier* (1986), 147 Ill. App. 3d 150, 157), effectively allowing their admission only if they are cumulative of the witnesses' in-court testimony. (*Martin v. Zucker* (1985), 133 Ill. App. 3d 982, 985, citing E. Cleary & M. Graham, Handbook of Illinois Evidence §803.11, at 578 (4th ed. 1984).) Hospital records are also admissible, however, if they meet any other exception to the hearsay rule, such as past recollection recorded. See, *e.g.*, *Wilson v. Parker* (1971), 132 Ill. App. 2d 5; *Healy v. City of Chicago* (1969), 109 Ill. App. 2d 6.

■■ While Collins explained most of the entries on the chart, she stated that she did not recognize the handwriting at the top. Plaintiffs' attorney therefore did not lay a sufficient foundation to qualify those entries for admission as business records or as a witness' past recollection recorded. (See, *e.g.*, *People v. Unes* (1986), 143 Ill. App. 3d 716, 721; *Wilson v. Parker*, 132 Ill. App. 2d at 6-7 (setting out the foundation requirements for admitting a document as a past recollection recorded).) It therefore appears that the court properly permitted the jury to hear only that information from the chart that had been qualified as an exception to the hearsay rule. See generally *Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 556 (holding that where portions of a document consist of irrelevant material, the preferred procedure is to have the relevant portions read to the jury).

■■ ■ Although not raised by plaintiffs, we note that hospital records may also qualify as admissions of a party-opponent. (See E. Cleary & M. Graham, Handbook of Illinois Evidence §803.11, at 137 (September 1987 Supp.); see generally *Oak Lawn Trust & Savings Bank v. City of Palos Heights* (1983), 115 Ill. App. 3d 887, 896 (holding that statements by an agent may constitute an admission which may be introduced as substantive evidence against the principal).) The chart purports to be an original hospital record and was authenticated as such by Collins. We find it unnecessary to determine whether there was a sufficient foundation to qualify every entry on the chart as an admission, however (but see *Oak Lawn Trust & Savings Bank v. City of Palos Heights*, 115 Ill. App. 3d at 896 (requiring the proponent to show that the statement was made by an agent in the course of per-

forming his duties and regarding matters within the scope of his employment)), because even if we were to assume that every entry was admissible evidence, we would find no reversible error. Plaintiffs do not claim that the court improperly excluded relevant and admissible evidence—the record establishes that witnesses read to the jury every significant notation contained on the chart. Rather, plaintiffs allege error in the court's refusal to let the jury see the notations that had already been read to it. In short, the court restricted the manner in which it allowed plaintiffs to present this evidence to the jury. However, "the manner and extent of the presentation of evidence are largely within the discretion of the trial court." (*People v. Williams* (1983), 97 Ill. 2d 252, 292.) The trial court also has broad discretion to decide whether items of evidence or exhibits may be taken into the jury room, and its decision will not be reversed on appeal absent an abuse of that discretion. (*People v. Williams*, 97 Ill. 2d at 292; *Fultz v. Peart* (1986), 144 Ill. App. 3d 364, 379.) Plaintiffs are not entitled to a new trial unless they can demonstrate that they were prejudiced by the court's ruling. (See *People v. Williams*, 97 Ill. 2d at 292.) They have not done so.

As stated above, every significant notation contained on the chart was read to the jury at least once during Collins' testimony. She admitted to having made only two recordings, but stated that during the disputed time period she was constantly listening to the fetal heart beat, which was amplified by a monitor attached to Linda Smith's abdomen. Charles and Linda Smith testified that the monitor was not attached. The attorney for plaintiffs repeatedly emphasized the Smiths' testimony and the fact that only two fetal heart-rate recordings appeared on the chart. During closing arguments, he even described the chart to the jury, including the spaces provided on it for recording the heart rate at 15-minute intervals. We do not believe that viewing the chart would have altered the jury's resolution of the conflicting evidence. The jury did not have to see the chart to draw the inference that the rate was observed only twice; if it had chosen to draw that inference, we believe it would have done so from the testimony provided to it. We find no abuse of discretion in the trial court's refusal to permit the jury to view the labor chart.

## II

■ Plaintiffs also argue that defendant's expert witness made a statement which violated an *in limine* order and that the statement was so prejudicial to plaintiffs' case that they were effectively denied a fair trial. See *Reidelberger v. Highland Body Shop, Inc.* (1981), 83

Ill. 2d 545, 554 (holding that alleged violations of an *in limine* order do not warrant a new trial unless they constitute conduct that denied plaintiff a fair trial).

The relevant portion of the *in limine* order provided simply that "Plaintiff's motion re: mother's history of suspected epilepsy as a child granted." Gabrielle's brain damage or brain disorder was first discovered when she began suffering convulsive seizures. Although there is no record of plaintiffs' motion *in limine* or arguments of counsel regarding it, plaintiffs apparently believed that the jury might improperly associate Linda Smith's suspected, but unconfirmed, childhood epilepsy with Gabrielle's disorder.

The alleged violation of the order occurred during plaintiffs' cross-examination of defendant's expert witness, Dr. John Michael Hobart, a physician specializing in the treatment of high risk obstetric patients. The following exchange occurred between plaintiffs' attorney and Dr. Hobart:

"Q. When you reviewed the records, would you consider Linda Smith a high risk patient?

A. A mild high risk quality, yes.

Q. And why is that?

A. Because of her past history of repetitive urinary tract infections, there's a past history of a seizure disorder, because of the past history of hypothryoid and of course as she presented in labor, she had a dysfunctional labor pattern."

Plaintiffs' attorney then approached the bench and had a discussion off the record with the trial court. The court then instructed the jury to disregard the testimony concerning "any seizure disorder of Mrs. Smith."

While we believe that the statement regarding Mrs. Smith's seizure disorder would have violated the *in limine* order if elicited by defendant's counsel, the defendant cannot be held responsible either for the questions asked by plaintiffs' counsel or for the responses made to plaintiffs' questions by defendant's witnesses. (See *People v. Burage* (1961), 23 Ill. 2d 280, 282-83.) A party who "procures, invites or acquiesces" in the admission of improper evidence cannot complain that such evidence was prejudicial to his case. *People v. Burage*, 23 Ill. 2d at 283; *cf. Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 543 (concluding that it would be patently unfair to permit a party to secure a new trial on the basis of an error which he injected into the first trial); *Casson v. Nash* (1978), 74 Ill. 2d 164, 171-72 (holding that a party cannot claim that evidence which he put into the record was prejudicial to him).

■ We additionally do not believe the statement resulted in prejudice sufficient to deny plaintiffs a fair trial. (See *Reidelberger v. Highland Body Shop, Inc.*, 83 Ill. 2d at 554.) The trial court immediately instructed the jury to disregard the statement. Moreover, Dr. Hobart did not suggest that Gabrielle's retardation resulted from an inherited seizure disorder, but simply included Mrs. Smith's reported seizure history among factors that might make her a high risk patient. We conclude that the statement caused no significant prejudice to plaintiffs.

For the reasons stated, the judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

HOPF and DUNN, JJ., concur.