FIRST DIVISION
March 6, 2006

No. 1-04-3155

MICHAEL CANGEMI and           )
MADELINE CLEMENT BELT,        )          Appeal from the
                              )          Circuit Court of
          Plaintiffs-Appellants,  )          Cook County, Illinois.
                              )
v.                            )          No. 03 L 8130
                              )
ADVOCATE SOUTH SUBURBAN HOSPITAL, )      Honorable
an Illinois corporation, EDGAR DEL CASTILLO, )   Sharon J. Coleman,
M.D.,                         )          Judge Presiding.
                              )
          Defendants-Appellees.   )
                              )

JUSTICE GORDON delivered the opinion of the court:

Michael Cangemi and his mother, Madeline Clement Belt, appeal the dismissal of their

amended complaint against defendants Advocate South Suburban Hospital (Advocate Hospital)

and Edgar Del Castillo, M.D., for medical negligence for injuries allegedly sustained during the

delivery of Michael in 1982. Plaintiffs allege that the statutes of limitation and repose normally

applicable to such a cause of action (see 735 ILCS 5/13-212 (West 2004)) do not apply here

because the defendants fraudulently concealed the existence of the cause of action (see 735 ILCS

5/13-215 (West 2004)). Plaintiffs further appeal the circuit court's denial of their motion to file a

second amended complaint. For the reasons that follow, we affirm.

I.          BACKGROUND

On July 7, 2003, plaintiffs filed their complaint, seeking recovery for brain damage

sustained by Michael prior to his delivery via caesarean section in1982, and for other damages

sustained by both Michael and Madeline, including pain, discomfort, emotional distress, loss of

normal life and "other damages of a personal and pecuniary nature." Plaintiffs' complaint named as defendants Advocate Hospital, Drs. Del Castillo, Simpson, and McMann, and the estates of the deceased Drs. Hiatt and Chavez. Count I of the complaint charged direct negligence against Advocate Hospital, while counts II and III charged Advocate Hospital with vicarious liability for the negligence of the other defendants on the theories of respondeat superior and apparent agency. Count IV was a direct charge of negligence against Dr. Hiatt. Count V alleged that the statutes of limitation and repose that would normally be applicable to the above counts were tolled in this case because the defendants fraudulently concealed Michael's injuries by not informing Madeline of the circumstances surrounding his birth.

Defendants Advocate Hospital, Del Castillo, and McMann each subsequently moved for dismissal pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure. 735 ILCS 5/2-615, 2-619 (West 2004). The estates of Drs. Hiatt and Chavez were not served, no appearances where made on their behalf, and they were not explicitly included in any of the other defendants' motions to dismiss. On December 23, 2003, the circuit court granted Advocate Hospital's and Dr. Del Castillo's section 2-615 motions to dismiss and struck plaintiffs' complaint with leave to amend. The court declined to rule on these defendants' section 2-619 motions and the court did not address either of Dr. McMann's and Dr. Simpson's combined motions to dismiss. With regard to Advocate Hospital and Dr. Del Castillo's section 2-615 motions, the court noted that the complaint was insufficient to support fraudulent concealment because no allegations were made that the defendants acted in an affirmative manner to conceal the circumstances around Michael's birth.

On March 19, 2004, plaintiffs filed their first amended complaint in which they dropped Dr. Simpson as a defendant. The complaint consisted of six counts and a "historical and factual background" section which contained specific allegations of fraudulent concealment applicable to all counts. Count I remained a direct charge of negligence against Advocate Hospital, and counts II and III remained as charges of vicarious liability against Advocate hospital on the theories of *respondeat superior* and apparent agency. Counts IV, V, and VI, respectively, charged Drs. Hiatt, Del Castillo, and Chavez with negligence.

The plaintiffs alleged the following in their first amended complaint. At approximately 9 p.m. on January 17, 1982, Madeline was admitted to Advocate Hospital due to labor pains for her pregnancy with Michael. She was two weeks past her due date and was admitted upon the authorization of her physician, Dr. Richard Hiatt, although he was not present at the time of her admission. During the evening of January 17, and into the morning of January 18, Madeline experienced contractions at five-minute intervals followed by irregular contractions. She also experienced lower abdominal pain, back pain, severe pressure in the abdomen and "bloody show." Dr. Hiatt was called several times after her admission but was "unavailable."

In the early morning of January 18, Madeline discharged meconium stains and amniotic fluid and her cervix was dilated to three centimeters. At 7:55 a.m., a fetal monitor was placed on her by hospital staff. At approximately 9:50 a.m., while apparently awaiting the arrival of her physician, Dr. Hiatt, Madeline saw a doctor for the first time since being admitted when Dr. Del Castillo arrived after being summoned by hospital staff for consultation. Dr. Del Castillo observed "fetal distress," called a "code blue," and ordered an emergency caesarean section. He

3

had Madeline sign a consent form for the surgery but did not tell her that he had observed fetal distress. Rather, he said: "a c-section is necessary because your baby's head is too large for your birth canal. You will injure your baby if we force a natural delivery or your baby could die."

Michael was delivered via caesarean section at approximately 11 a.m. on January 18, 1982. He had suffered fetal distress prior to birth, had been "stillborn,"[1] and required resuscitation with oxygen upon delivery. Plaintiffs' complaint further alleged that although hospital records indicated that Dr. Hiatt had performed the surgery, he actually did not arrive until after it was completed.

In the recovery room after the delivery, Madeline spoke to a nurse named Karen. Madeline asked Karen whether Dr. Hiatt had arrived in time to perform the surgery and whether there were any complications. Karen responded by saying: "Dr. Hiatt was there during the whole operation. Everything went well, your baby was born without any symptoms or

---

[1]Both defendants contest the use of the term "stillborn" as it does not appear in any of the hospital records plaintiffs later attached as exhibits to their reply to defendants' motions to dismiss, as will be discussed below. However, no hospital records were attached to the original or amended complaints to contradict plaintiffs characterization of Michael's birth.

indications of any problems. He is a fine baby."

Later that afternoon, another nurse, named Gertrude, attended to Madeline. Madeline asked Gertrude whether Dr. Hiatt had been to see her yet and whether he had performed the surgery. Gertrude responded that Dr. Hiatt had not yet been to see her, but that he had performed the caesarean section. Upon inquiry by Madeline, Gertrude further stated "the records show your baby had no problems, everything was fine."

The next day, on January 19, 1982, Dr. Hiatt visited Madeline in her room at the hospital for the first time. He stated that everything went "fine" during the delivery. He further stated:

> "I am sorry for not getting to the hospital earlier yesterday. If I had I would have been able to have told you earlier about how large your baby's head had gotten this past couple of weeks so that we were best off to do C-section. I could have avoided all of that last minute hurrying around you had to go through. The reason I did the C-section was to be safe. There may have been damage to the baby because of how large his head had grown. *** I was there just in time. Everything went well with your labor and delivery, the baby was born without any symptoms of any possible complications or problems. Everything will be fine."

On January 20, 1982, Madeline was visited in her hospital room by Dr. Chavez. He introduced himself as one of the doctors who had assisted in delivering her baby. Dr. Chavez stated:

> "Dr. Hiatt did a very good job. We didn't have any problems with your delivery.

Your baby is very healthy. He had no problems. We had to hurry because you were ready but everything went perfect. Your baby will be fine. He had no problems."

In February of 1982, Madeline visited Dr. McMann in her office. Madeline asked Dr. McMann whether she had received Michael's birth records. Dr. McMann stated that she had. She further stated: "I didn't study the charts in detail but from what I saw, your labor and delivery and Michael's birth went fine. The chart didn't show any problems. He is very healthy."

In the summer of 2002, approximately 20 years later, Madeline, who had since moved to Texas, was in Chicago visiting a friend. She decided that a complete set of Michael's medical records might be helpful in his attempts to obtain financial assistance for college from the state of Texas on the basis of being developmentally slow. Michael had recently graduated from high school at the age of 20. Madeline visited Advocate Hospital and obtained a partial set of Michael's birth records. On her return flight to Texas in August of 2002, Madeline reviewed those records and "learned for the very first time that Michael had suffered from fetal distress due to loss of oxygen prior to birth which necessitated the emergency C-section and that Michael was not breathing when born and had to be resuscitated."

In April of 2004, defendants Advocate Hospital, Dr. Del Castillo, and Dr. McMann each filed motions to dismiss plaintiffs' first amended complaint pursuant to sections 2-615 and 2-619. As before, the estates of Drs. Hiatt and Chavez remained unserved and no appearances were made on their behalf. On May 19, 2004, plaintiffs filed a consolidated response to the

defendants' motions to dismiss.  Attached to plaintiffs' response were numerous exhibits

including affidavits of Madeline and her attorney, several of Michael's hospital records, and

nursing protocols.  None of these documents had previously been part of the pleadings.[2]  As an

alternative to their response requesting that defendants' motions be denied, plaintiffs also

requested leave to file a second amended complaint.  On August 4, 2004, the circuit court heard

oral arguments on the defendants' motions, and on August 6, 2004, the court issued its

memorandum opinion and order in which it stated:

> "Defendants [Advocate Hospital], Edgar Del Castillo, M.D., and Barbara
>
> J. McMann, M.D.'s Motions to Dismiss are granted, as the amended complaint is
>
> barred by the statute of limitations.
>
> Plaintiffs' Motion for Leave to Amend their Complaint is denied, the court
>
> finding that an amended pleading cannot cure the statute of limitations problem."

On August 31, 2004, plaintiffs filed a motion for reconsideration in which they

contended that the court erred in failing to allow a second amended complaint.  Attached to their

motion was a proposed second amended complaint which, according to plaintiffs, made

---

[2]We note that these exhibits are missing from this part of the record.  However, Michael's

"complete medical records" are attached to plaintiffs' subsequent motion to reconsider as are the

nursing protocols.  The affidavits of Madeline and her attorney, which were purportedly attached

to plaintiffs' response, are entirely absent from the record.  These affidavits are not specifically

relied upon by any party; therefore, we will make our decision based on the record provided.

numerous additional factual allegations, stated new causes of action, and included additional exhibits that were not previously available. On September 10, 2004, the court heard oral arguments on the motion and issued an order in which it denied plaintiffs' motion for reconsideration and plaintiffs' request to file a second amended complaint. Plaintiffs subsequently appealed.

## II.     ANALYSIS

On appeal, plaintiffs raise two primary issues: whether the circuit court erred in concluding that their claims were barred by the statute of limitations and not subject to the fraudulent concealment exception; and whether the circuit court abused its discretion in denying their request to file a second amended complaint to make additional allegations based on newly discovered medical records. In particular, plaintiffs contend that they alleged specific affirmative instances of fraudulent concealment on the part of the defendants which negated the applicability of the statutes of limitations and repose. Plaintiffs further contend with regard to the second issue that their proposed second amended complaint contained additional allegations and exhibits not previously available which made the circuit court's denial of their request an abuse of discretion. As to the first issue, Advocate Hospital counters that any fraudulent concealment perpetrated by its agents cannot be attributed to it for purposes of tolling the statute of limitations. Dr. Del Castillo also contends that plaintiffs have failed to properly allege fraudulent concealment attributable to him. As to the second issue, both defendants contend that the plaintiffs' proposed second amended complaint fails to remedy the defects in the first amended complaint, and, therefore, the circuit court's refusal to allow the second amendment

No. 1-04-3155

was proper.

## A. Jurisdiction

Before discussing the substantive issues of this appeal, we are first compelled to address whether we have jurisdiction. Although Advocate Hospital concedes that we have jurisdiction and Dr. Del Castillo does not address the issue, it is our duty to consider jurisdiction *sua sponte*. Salemi v. Klein Construction Co., 266 Ill. App. 3d 110, 113, 639 N.E.2d 629, 631 (1994). As noted, plaintiffs' original complaint named Advocate Hospital and five individual doctors as defendants. Plaintiffs' amended complaint omitted one of the originally named doctors, Elda H. Simpson, M.D., leaving the hospital and four doctors as defendants. Defendants Advocate Hospital, Dr. Del Castillo, and Dr. McMann all filed motions to dismiss plaintiffs' amended complaint, all of which were granted by the circuit court in its August 6, 2004, order. Plaintiffs have opted not to appeal the circuit court's order with regard to Dr. McMann; thus Advocate Hospital and Dr. Del Castillo are the only appellees before us. The remaining defendants, the estates of Drs. Hiatt and Chavez, were named in both the original and amended complaints (as well as plaintiffs' proposed second amended complaint); however, plaintiffs never served these defendants or voluntarily dismissed them from the suit. Moreover, the circuit court never explicitly dismissed plaintiffs' claims against Drs. Hiatt and Chavez or addressed whether they remained defendants.

Supreme Court Rule 304(a) provides:

"If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgement as to one or more but fewer than

9

all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both. *** In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revisions at any time before the entry of a judgment adjudicating all the claims, rights and liabilities of all the parities."

155 Ill. 2d R. 304(a).

The purpose of Rule 304(a) is "to discourage piecemeal appeals in the absence of just reason, and to remove the uncertainty which exists when a final judgment is entered on less than all matters in the controversy." Petersen Bros. Plastics, Inc. v. Ullo, 57 Ill. App. 3d 625, 630, 373 N.E.2d 416, 420 (1978).

It is clear that the circuit court did not make such an "express written finding" in the orders being appealed here. However, plaintiffs contend that since Drs. Hiatt and Chavez were never served, the circuit court never had *in personam* jurisdiction over them. Thus, plaintiffs would contend that those unserved defendants did not constitute "parties" as contemplated by Supreme Court Rule 304(a) and the circuit court's dismissal with regard to Advocate Hospital and Drs. Del Castillo and McMann constituted a final judgement as to all parties and claims.

However, plaintiffs' reasoning does not comport with Illinois case law. For instance, in Zak v. Allson, 252 Ill. App. 3d 963, 964-65, 625 N.E.2d 160, 161-62 (1993), the plaintiff's complaint for breach of contract named two defendants, one of whom, Allson, was never served, never appeared, and no relief was ever sought on his behalf. The other defendant, Tinghino,

successfully moved to dismiss plaintiff's complaint on the basis of *res judicata* and plaintiff appealed. Zak, 252 Ill. App. 3d at 964, 625 N.E.2d at 161. The court found that Allson was still a "defendant and a party within the context of Rule 304(a)" despite the fact that he had never been served. Zak, 252 Ill. App. 3d at 965, 625 N.E.2d at 162, citing Mares v. Metzler, 87 Ill. App. 3d 881, 409 N.E.2d 447 (1980). Therefore, the court found that it lacked jurisdiction to hear the appeal because the circuit court never made the express written finding required by Supreme Court Rule 304(a). Zak, 252 Ill. App. 3d at 965, 625 N.E.2d at 162.

However, despite the flaw in plaintiffs' argument as to why we have jurisdiction, the rule as expressed in Zak, that even unserved defendants constitute parties for purposes of the requirements of Rule 304(a), is subject to an exception. In Merritt v. Randall Painting Co., 314 Ill. App. 3d 556, 559, 732 N.E.2d 116, 118 (2000), like in Zak, certain defendants brought a motion to dismiss while other defendants named in the complaint where never served, or present, or otherwise represented before the court. However, the Merritt court distinguished its facts from those of Zak:

"In the instant case, the liability of Randall Painting Company, one of the defendants that was served and moved for dismissal, is predicated, in part, upon the alleged acts of its agents and employees, the four unserved defendants. Accordingly, as to the acts alleged to have been committed by the four unserved defendants, Randall Painting Company and those defendants constitute a unified tortfeasor." Merritt, 314 Ill. App. 3d at 559, 732 N.E.2d at 118, citing Towns v. Yellow Cab Co., 73 Ill. 2d 113, 123-24, 382 N.E.2d 1217, 1221 (1978) (wherein

11

the court stated: "When an action is brought against a master based on the alleged

negligent acts of his servant, and no independent wrong is charged on behalf of

the master, his liability is entirely derivative, being founded upon the doctrine of

*respondeat superior*. In this regard, it has been said that the liability of the master

and servant for the acts of the servant is deemed that of one tortfeasor and is a

consolidated or unified one").

The Merritt court further stated:

"[t]he claims asserted against Randall Painting Company under the theory of

*respondeat superior* and those asserted against the four unserved defendants 'are

one and the same' (Towns, 73 Ill. 2d at 125[, 382 N.E.2d at 1222]). Under these

circumstances, we interpret the trial court's order as a dismissal of the complaint

in its entirety. Accordingly, we find we have jurisdiction over the instant appeal

under Rule 301." Merritt, 314 Ill. App. 3d at 559, 732 N.E.2d at 118.

See also Towns, 73 Ill. 2d at 122, 382 N.E.2d 1217, 1221 ("a judgment for either the master or

servant, arising out of an action predicated upon the alleged negligence of the servant, bars a

subsequent suit against the other for the same claim of negligence where the agency relationship

is not in question").

As in Merritt, the plaintiffs here allege that Advocate Hospital (a properly served

defendant that successfully moved for dismissal) is responsible for the negligence of its agents

through the doctrine of respondeat superior. Moreover, plaintiffs' complaint does not allege any

negligence against Dr. Hiatt or Dr. Chavez that is not also attributed to Advocate Hospital

through *respondeat superior*. Advocate Hospital has not contested the agency status of these doctors and, as noted, has conceded that we have jurisdiction. Accordingly, we find that rule enunciated in Merritt applies here, and the circuit court's dismissal of plaintiffs' claim against Advocate Hospital acted as a dismissal of plaintiffs' claims against Drs. Hiatt and Chavez as they collectively constitute a "unified tortfeasor" for purposes of plaintiffs' complaint. Merritt, 314 Ill. App. 3d at 559, 732 N.E.2d at 118. Therefore, the circuit court's order constituted a final judgment as to all claims and all defendants, and we have jurisdiction under Supreme Court Rule 301.

### B. Fraudulent Concealment

We next address plaintiffs' contention that the circuit court erred in granting defendants' motions to dismiss because the statutes of limitation and repose were rendered inapplicable by the defendants' fraudulent concealment of the cause of action. As noted, the defendants each brought motions to dismiss under sections 2-615 and 2-619. Motions to dismiss pursuant to section 2-615 attack the legal sufficiency of the complaint by pointing to defects which appear on the face of the complaint. Illinois Graphics Co. v. Nickum, 159 Ill. 2d 469, 484, 639 N.E.2d 1282, 1289 (1994). The question presented on review of a motion to dismiss pursuant to section 2-615 is "whether sufficient facts are contained in the pleadings which, if established, could entitle plaintiff to relief." Nickum, 159 Ill. 2d at 488, 639 N.E.2d at 1291. On the other hand, while a motion to dismiss pursuant to section 2-619 also attacks the legal sufficiency of the complaint, it generally does so by raising affirmative matter that avoids the legal effect of or defeats the claim. Nickum, 159 Ill. 2d at 485, 639 N.E.2d at 1289. The question on review of a

13

motion to dismiss pursuant to section 2-619 is "whether there is a genuine issue of material fact and whether defendant is entitled to judgment as a matter of law." Nickum, 159 Ill. 2d at 494, 639 N.E.2d at 1294.

As noted, the circuit court did not specifically delineate whether it was granting defendants' motions on the basis of section 2-615 or section 2-619. The court, however, did state "the amended complaint is barred by the statue of limitations." The statute of limitations is normally an affirmative defense appropriate only to motions to dismiss pursuant to section 2-619; however, where it appears from the face of the complaint that the statute of limitations has run, such a defense can also be raised in a section 2-615 motion to dismiss. See Lissner v. Michael Reese Hospital & Medical Center, 182 Ill. App. 3d 196, 206, 537 N.E.2d 1002, 1008 (1989). Thus, because plaintiffs' complaint essentially conceded that the statutes of limitations and repose had passed, plaintiffs had the burden of pleading fraudulent concealment to overcome those limits. Therefore, if the circuit court was correct in finding that fraudulent concealment was not adequately pled, dismissal would have been appropriate on the basis of timeliness under either section 2-615 or section 2-619. In either case, we review both motions *de novo*. King v. First Capital Financial Services Corp., 215 Ill. 2d 1, 12, 828 N.E.2d 1155, 1161 (2005).

The statutes of limitation and repose applicable to actions against physicians and hospitals are set out in section 13-212 of the Illinois Code of Civil Procedure. 735 ILCS 5/13-212 (West 2004). Subsection (a) states:

"Except as provided in Section 13-215 of this Act, no action for damages for injury or death against any physician *** or hospital duly licensed under the

14

laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known \*\*\* of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." 735 ILCS 5/13-212(a) (West 2004).

Subsection (b) states in pertinent part:

"Except as provided in Section 13-215 of this Act, no action for damages for injury or death against any physician \*\*\* or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 8 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death where the person entitled to bring the action was, at the time the cause of action accrued, under the age of 18 years; provided, however, that in no event may the cause of action be brought after the person's 22nd birthday."  735 ILCS 5/13-212(b) (West 2004).

Thus, because Madeline was an adult at the time Michael was born, she was subject to section 13-212(a), which imposed a two-year limitations period running from the date she discovered her injury, or, at most, a four-year repose period running from the date of the defendants' alleged

negligence. However, since Madeline has alleged that she first discovered her injury in 2002, some 20 years after the alleged negligence, the discovery facet of section 13-212(a)'s limitations period would not apply because the four-year repose period set a maximum time limit and cut off her claim in January of 1996. Similarly, section 13-212(b) applied to Michael as a minor at the time of the alleged negligent conduct, and imposed a maximum repose period of eight years stemming from the date of the negligence. Thus, according to section 13-212(b), Michael's claim expired in January of 1990.

However, while plaintiffs concede that the time frames set out in section 13-212 were exceeded prior to the filing of their initial complaint, they rely on section 13-215, as referred to in section 13-212, to save their claims. Section 13-215 states:

"If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13-215 (West 2004).

Thus, according to plaintiffs, their complaint filed July 3, 2003, was timely because it was filed less than five years after Madeline's discovery of the cause of action in August of 2002.

Generally, a plaintiff who invokes section 13-215 to toll the statute of limitations must show

"affirmative acts by the defendant which were designed to prevent, and in fact did prevent, the discovery of the claim. [Citations.] Mere silence of the

16

defendant and the mere failure on the part of the plaintiff to learn of a cause of action do not amount to fraudulent concealment. [Citations.]

It has been held that a plaintiff must plead and demonstrate that the defendant made misrepresentations or performed acts which were known to be false, with the intent to deceive the plaintiff, and upon which the plaintiff detrimentally relied. [Citations]. *** In addition, fraudulent misrepresentations which form the basis of the cause of action do not constitute fraudulent concealment under section 13-215 in the absence of a showing that the misrepresentations tended to conceal the cause of action. [Citations.]" Foster v. Plaut, 252 Ill. App. 3d 692, 699, 625 N.E.2d 198, 203 (1993).

Plaintiffs contend that they adequately pled fraudulent concealment on the part of Dr. Del Castillo to sustain their negligence claim against him and to attribute his negligence as an agent to Advocate Hospital as a principal. Specifically, plaintiffs contend that Dr. Del Castillo fraudulently told Madeline that a caesarean section was necessary because of the size of the baby's head, when in fact signs of fetal distress, and not the baby's size, necessitated the surgery. Plaintiffs contend that Dr. Del Castillo made this misrepresentation to conceal his negligence and that of the hospital in not reacting to the fetal distress sooner. The instances of negligence plaintiffs attribute to Dr. Del Castillo consisted of his failure to attend to Madeline until nearly two hours after the fetal monitor was placed on her, and his one-hour delay of the surgery after first observing fetal distress. We find plaintiffs contentions unavailing.

Plaintiffs have failed to adequately state a cause of action against Dr. Del Castillo for

negligence. Illinois is a fact-pleading state and "[a] plaintiff must allege facts sufficient to bring his or her claim within the scope of the cause of action asserted." Jordan v. Knafel, 355 Ill. App. 3d 534, 544, 823 N.E.2d 1113, 1122 (2005). The elements of negligence include duty, a breach of that duty, proximate cause, and damages. Kirwan v. Lincolnshire-Riverwoods Fire Protection District, 349 Ill. App. 3d 150, 155, 811 N.E.2d 1259, 1263 (2004). Plaintiffs first contend that Dr. Del Castillo was negligent in not attending to Madeline until after he was summoned at 9:50 a.m. However, plaintiffs' first amended complaint did not allege that Dr. Del Castillo was even aware of Madeline's presence in the hospital prior to when he was summoned at 9:50 a.m. Nor did the amended complaint allege sufficient facts to establish that Dr. Del Castillo was under a duty to be aware of Madeline's presence. Similarly, plaintiffs made no allegation that the hospital staff who attended to Madeline prior to Dr. Del Castillo's arrival were his agents such that their negligence in failing to summon him earlier could be imputed to him. See Caligiuri v. First Colony Life Insurance Co., 318 Ill. App. 3d 793, 801, 742 N.E.2d 750, 756 (2000). Furthermore, plaintiffs' contention that Dr. Del Castillo was negligent in delaying that surgery after observing fetal distress is unsupported by the amended complaint. Plaintiffs did not allege that Dr. Del Castillo had a duty to perform the surgery himself or that he was even a surgeon capable of such a procedure. Nor did plaintiffs allege that Dr. Del Castillo had an additional duty beyond calling the "code blue," scheduling the caesarean section, and obtaining Madeline's consent for the surgery, to cause other physicians to perform the surgery in a timely manner. Rather, with regard to Dr. Del Castillo's duty, plaintiffs' amended complaint generally stated:

"At all relevant times, Del Castillo, individually and as agent of [Advocate

18

Hospital], had a duty to possess and apply the knowledge and use the skills and care ordinarily used by reasonably well qualified medical practitioner [*sic*] in the same or similar localities under circumstances similar to those in this case."

Such a general statement, without more, cannot stand for the specific breaches of duty plaintiffs appear to assume Dr. Del Castillo committed, namely, that he breached a duty to attend to Madeline earlier and a duty to further expedite the surgery after observing a problem.

Fraudulent concealment, as codified in section 13-215, is not a cause of action in and of itself; rather, it acts as an exception to the time limitations imposed on other, underlying causes of action. See generally 735 ILCS 5/13-215 (West 2004). Thus, any fraudulent concealment attributable to Dr. Del Castillo would be irrelevant to *his* liability unless he also was negligent. In this regard, we note that the fraudulent concealment of a cause of action by someone other than the defendant may toll the limitations period only where the person fraudulently concealing the cause of action is in privity with or an agent of the defendant. Serafin v. Seith, 284 Ill. App. 3d 577, 590, 672 N.E.2d 302, 311 (1996). As such, if Dr. Del Castillo's statements to Madeline constituted fraudulent concealment, they could potentially act to toll the limitations period on an action against Advocate Hospital if Dr. Del Castillo were an agent. However, regardless of whether plaintiffs adequately pled fraudulent concealment, they have not adequately pled the duty and breach elements of a negligence cause of action against Dr. Del Castillo. While, as previously noted, the circuit court based its dismissal of plaintiffs claims against Dr. Del Castillo on the running of the statute of limitations, "[a] court of review may affirm a trial court's judgment upon any ground appearing in the record, regardless of whether it was relied upon by

19

the trial court and regardless of whether the reasoning of the trial court was correct." In re

Marriage of Lehr, 317 Ill. App. 3d 853, 862, 740 N.E.2d 417, 424-25 (2000). Accordingly, we

find that dismissal was proper under section 2-615. Nickum, 159 Ill. 2d at 488, 639 N.E.2d at

1291.

Plaintiffs similarly contend that they adequately pled fraudulent concealment attributable

to Advocate Hospital to sustain their negligence causes of action against that defendant.

Specifically, plaintiffs contend that the statements made by the hospital's actual or apparent

agents Drs. Del Castillo, Hiatt, and McMann and nurses "Karen" and "Gertrude" constituted

affirmative acts that were made with the intention of concealing the cause of action.[3] Advocate

Hospital, on the other hand, contends that the fraudulent concealment of an agent cannot apply to

toll the limitations period on a cause of action against a principal unless the principal is actually

aware of the agent's fraudulent concealment. Thus, according to Advocate Hospital, since

---

[3]We note that although plaintiffs' allegations of Dr Del Castillo's negligence, as discussed

above, are insufficient to state a claim against him and consequently cannot be vicariously

imputed to Advocate Hospital through an agency relationship, plaintiffs have alleged several

other instances of negligence against other agents of Advocate Hospital that may well suffice to

state a cause of action against Advocate Hospital even though those alleged agents were either

not joined or dismissed from the case. For instance, plaintiffs alleged negligence on the part of

hospital staff and nurses, as well as Drs. Hiatt, Chavez and McMann. In addition, plaintiffs also

allege direct negligence against Advocate Hospital that was fraudulently concealed by its agents.

plaintiffs did not allege that any "officer, director or other principal" of the hospital knew of any fraudulent concealment, the plaintiffs' causes of actions expired in accordance with the deadlines set out in section 13-212 at least by 1986 and 1990 respectively.

In support, Advocate Hospital first cites Wood v. Williams, 142 Ill. 269, 31 N.E.2d 681 (1892). In that case, plaintiff gave defendants money to invest in a mortgage that turned out to be forged. Defendant's pled the statute of limitations as a defense. Wood, 142 Ill. at 275-76, 31 N.E.2d at 681. Plaintiff argued that the cause of action had been fraudulently concealed by Fursman, an agent of defendants. Wood, 142 Ill. at 279, 31 N.E.2d at 683. The supreme court affirmed the dismissal on the basis of untimeliness quoting section 276 of Wood on Limitations: " '[t]he fraudulent concealment must have been that of the party sought to be charged, and a mere allegation of proof that it was the act of his agent will not be sufficient, unless he is in some way shown to have been instrumental in or cognizant of the fraud.' " Wood, 142 Ill. at 280-81, 31 N.E.2d at 683, quoting H. Wood, Wood on Limitations §276 (1882).

Wood has been approved of and followed by our supreme court in Chicago Park District v. Kenroy Inc., 78 Ill. 2d 555, 563, 402 N.E.2d 181,185 (1980). In Kenroy, the Chicago Park District initiated eminent domain proceedings to acquire a parcel of land owned by the defendants. Kenroy, 78 Ill. 2d at 558, 402 N.E.2d at 183. However, prior to the proceedings, defendants bribed a city alderman to support the rezoning of the real estate from "R4 residential use" to "planned development No. 67." Kenroy, 78 Ill. 2d at 559, 402 N.E.2d at 183. The property was successfully rezoned and its value for purposes of the eminent domain proceedings was thereby increased by $5 million. Kenroy, 78 Ill. 2d at 559, 402 N.E.2d at 183. Several

years later, the Chicago Park District and the City of Chicago, having discovered the fraud,

brought suit to impose a constructive trust.  Kenroy, 78 Ill. 2d at 559-60, 402 N.E.2d at 183.

Defendants raised the statute of limitations as a defense and the plaintiffs argued that the cause

of action had been fraudulently concealed by the alderman.  Kenroy, 78 Ill. 2d at 560, 402

N.E.2d at 184.  The court stated:

> "It is ordinarily true that the fraudulent concealment of a cause of action
>
> by a person other than the defendant will not toll the statute of limitations.
>
> [Citing, among other cases, Wood, 142 Ill. at 280-81, 31 N.E.2d at 683, and
>
> Bryan v. United States, 99 F.2d 549, 552 (10th Cir. 1938).]  However, if the third
>
> person is in privity with or occupies an agency relationship with the defendant,
>
> then the *defendant's knowledge or approval of the concealment* has generally
>
> been held sufficient to toll the limitation period."  (Emphasis added.)  Kenroy, 78
>
> Ill. 2d at 563, 402 N.E.2d at 185, citing Laventhol, Krekstein, Horwath &
>
> Horwath v. Tuckman, 372 A.2d 168, 170-71 (Del. 1976),  Pashley v. Pacific
>
> Electric Ry. Co., 25 Cal. 2d 226, 235-36, 153 P.2d 325, 330 (1944), Oddo v.
>
> Interstate Bakeries, Inc., 271 F.2d 417, 423-24 (8th Cir. 1959), Schram v. Burt,
>
> 111 F.2d 557, 563 (6th Cir. 1940), G. Bogert, Trusts §955, at 506-10 (2d ed.
>
> 1916), 2 G. Wood, Wood on Limitations §276 at 1374-75 (4th ed. 1916).

The court determined that "the existence of an agency relationship, privity or even an actual

conspiracy" between the defendants and the city alderman had been adequately alleged, and then

held that section 22 of the Limitations Act (the predecessor of section 13-215) applied to toll the

cause of action against defendants because they actively induced the alderman to fraudulently conceal the cause of action from the city. Kenroy, 78 Ill. 2d at 564, 402 N.E.2d at 186. Thus, under the analysis in Kenroy, accountability for an agent's fraudulent concealment does not extend to a principal unless the principal is shown to have known or approved of the concealment.

Likewise, in Barbour v. South Chicago Community Hospital, 156 Ill. App. 3d 324, 325, 509 N.E.2d 558, 559 (1987), the plaintiff filed suit against the defendant hospital alleging that while she was a patient for purposes of receiving an abortion, an unauthorized tubal ligation was also performed without her consent or knowledge. Plaintiff contended that the hospital was equitably estopped by section 13-215 from raising a statute of limitations defense because the hospital's agents, a Dr. Harrod and a nurse August, fraudulently concealed the cause of action by telling plaintiff that she was still fertile and providing her with birth control. Barbour, 156 Ill. App. 3d at 326, 330, 509 N.E.2d at 560, 563. Citing Wood, 142 Ill. 269, 31 N.E.2d 681, and Kenroy, 78 Ill. 2d 555, 402 N.E.2d 181, the court stated: "Under Illinois law, a principal is not estopped from rasing the statute of limitations as a defense unless the principal knew, or participated in, the concealment alleged to have been committed by the agent." Barbour, 156 Ill. App. 3d at 330, 509 N.E.2d at 563, citing Wood, 142 Ill. 269, 31 N.E. 681 and Kenroy, 78 Ill. 2d 555, 402 N.E.2d 181. The court then noted:

"[plaintiff] does not allege that the hospital's board of directors knew of the alleged conspiracy nor does [plaintiff] claim that any other department chief was aware of the alleged conspiracy. Instead, [plaintiff] attempts to hold the hospital,

as principal, liable for an agent's alleged concealment of a cause of action.
However, Illinois courts, including the supreme court, have refused to expand the doctrine of equitable estoppel set forth in section 13-215 to include an unknowing principal." Barbour, 156 Ill. App. 3d at 330-31, 509 N.E.2d at 563, citing Wood, 142 Ill. 269, 31 N.E.2d 681; Kenroy, 78 Ill. 2d 555, 402 N.E.2d 181.

Plaintiffs, however, attempt to distinguish Wood, Kenroy, and Barbour, on the basis that the agents in those cases were not full-time employees and, thus, were "nonservant" agents as opposed to the physicians and nurses in this case, who were employees and "servants" of Advocate Hospital. With respect to the "servant" agents in the instant case, plaintiffs urge us to apply the general rule of agency law that a principal may be liable for an agent's acts done in the course of employment "although the principal did not authorize or justify, or participate in, or, indeed, know of such misconduct, or even if he forbade the acts, or disapproved of them." J. Story, Story on Agency § 452 (1882). In further support of this proposition, plaintiffs cite Pashley v. Pacific Electric Ry. Co., 25 Cal. 2d 226,153 P.2d 325 (1944), a California case that was among three other out-of-state cases cited in Kenroy. See Kenroy, 78 Ill. 2d at 563, 402 N.E.2d at 185. In Pashley, the plaintiff sustained an eye injury while riding as a passenger on defendant's street car. Pashley, 25 Cal. 2d at 227, 153 P.2d 326. Defendant railway company sent plaintiff to physicians in its employ who told plaintiff not to see any other physician and that he would make a full recovery, when in fact, they knew plaintiff would eventually get a cataract that would impair his vision. Pashley, 25 Cal. 2d at 228,153 P.2d 326. The Pashley court noted that the deceit of the physicians was done for the benefit of their employer and held:

24

"the fraud of the agents will be imputed to the principal for the purpose of preventing the running of the statute of limitations whether the principal was aware of it or not." Pashley, 25 Cal. 2d at 236, 153 P.2d 330. See also Lightner Mining Co. v. Lane, 161 Cal. 689, 703, 120 P. 771, 777 (1912). Thus, according to plaintiffs, when dealing with employee or servant agents, like the physicians in Pashley and the physicians and nurses here, the general rules of agency apply with equal force in the context of the statute of limitations and the potential tolling effect of fraudulent concealment.

However, the distinction urged by plaintiffs with respect to the impact of fraudulent concealment between nonservant and servant agents is not made in Wood, Kenroy, or Barbour. Rather, the Illinois cases that have addressed the issue have not made the degree or scope of agency a dispositive consideration in determining whether an agent's fraudulent concealment can be imputed to a defendant principal, but have rested the inquiry on whether the defendant principal had knowledge of the fraudulent concealment. See Wood, 142 Ill. 269, 31 N.E.2d 681; Kenroy, 78 Ill. 2d 555, 402 N.E.2d 181; Barbour, 156 Ill. App. 3d at 326, 509 N.E.2d at 560; see also Serafin, 284 Ill. App. 3d at 590, 672 N.E.2d at 311. While this rule has a relatively long history (see Wood, 142 Ill. at 280-81, 31 N.E.2d at 683, citing H. Wood, Wood on Limitations §276 (1882)), there are no cases in Illinois purporting to reject, repudiate or otherwise modify this rule, and plaintiffs have only proffered the California cases of Pashley and Lightner that are in direct contradiction. Moreover, we have found support for the rule that only a knowing principal will be estopped from asserting the statute of limitations due to the fraudulent concealment of an agent in other jurisdictions. See Bryan v. United States, 99 F.2d 549, 552

(10th Cir.1938) ("The fraudulent concealment must have been that of the party sought to be charged, and fraudulent concealment by one who stands in the relation of agent to another will not bind the principal, unless the latter induced or had knowledge thereof"); School District of City of Sedalia v. De Weese, 100 F. 705, 710 (W.D. Mo. 1900); Stevenson v. Robinson, 39 Mich. 160, 160, (1878) (holding that the fraudulent concealment which will take a claim out of the statute of limitations must be that of the person sought to be charged); Vance v. Mottley, 92 Tenn. 310, 319, 21 S.W. 593, 595 (1893); Huntington National Bank v. Hintington Distilling Co., 152 F. 240, 248 (S.D. W. Va.1907).

Although not otherwise articulated, it would seem that the rationale behind this rule is consistent with the rationale behind statutes of limitations in general. For instance, it has been said that statutes of limitations "represent a pervasive legislative judgment that it is unjust to fail to put an adversary on notice to defend [an action] within a specified period of time, and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." 51 Am. Jur. 2d *Limitation of Actions* §13 (2000). Although a principal may rightly have to face liability for the acts of an agent even though he has no actual knowledge of the acts and has not approved of them, that potential liability does not run in perpetuity. The tolling effect of fraudulent concealment is equitable in nature, as are statutes of limitations (51 Am. Jur. 2d *Limitation of Actions* §§399, 13 (2000)); however, while equity is clearly not in favor of a tortfeasor who hides his own wrongful conduct even years after the limitations period has run, such disfavor would not necessarily attach as between an unknowing principal defendant and a plaintiff who brings a late claim. Courts in Illinois have decided not to extend the liability of an unknowing

principal on the basis of the fraudulent concealment of an agent. See Wood, 142 Ill. 269, 31 N.E.2d 681; Kenroy, 78 Ill. 2d 555, 402 N.E.2d 181; Barbour, 156 Ill. App. 3d at 326, 509 N.E.2d at 560; Serafin, 284 Ill. App. 3d at 590, 672 N.E.2d at 311. Accordingly, we find that plaintiffs' claims against Advocate Hospital are untimely because they have not alleged knowledge or ratification of the agents' alleged fraudulent concealment on the part of Advocate Hospital.

However, we note that the rule limiting the tolling effect of fraudulent concealment to only those principals with knowledge of their agents' concealment has been relaxed on a very limited basis with respect to corporations, which can only act through their agents. In Barbour, for example, in holding that knowledge of an agent is not attributable to a corporation, the court noted that, under its facts, no such knowledge was received by the board of directors, indicating that awareness on the part of a director may equated to knowledge of the corporation. Barbour, 156 Ill. App. 3d at 326, 509 N.E.2d at 560. This would be consistent with the general principle that

> "while a corporation may conduct its business through its president and other
> officers who are agents of the corporation, the ultimate source of all authority lies
> in the board of directors who stand in the place of and for their individual
> stockholders, and in the sense of control they exercise over corporate affairs may
> be said to actually constitute the corporation. Thus it is that the acts of the
> president and other officers of the corporation serve to bind the corporation only
> because they (presumably at least) reflect the will of the directors with whom all

corporate acts are required to originate. [Citation.]" <u>Federal Land Bank of St.</u>

<u>Louis v. Bross</u>, 122 S.W.2d 35, 39 (Mo. App. 1938).

Accordingly, we affirm the circuit court's dismissal of plaintiffs' claims against Advocate

Hospital.

## C. Equitable Estoppel

Plaintiffs next contend that doctrine of equitable estoppel provides a reason independent

from the fraudulent concealment provision of section 13-215 to reverse the circuit court's

dismissal of their case on the basis of timeliness. However, defendants contend that plaintiffs

have waived this argument by not asserting in the court below that equitable estoppel is

operative on its own dynamic independent of the fraudulent concealment provision of section 13-

215. Notably, plaintiffs do not respond to defendants' waiver contentions in their reply brief.

We agree that plaintiffs have forfeited their right to raise the issue and we therefore decline to

address it.[4] See <u>Central Illinois Public Service Co. v. Allianz Underwriters Insurance Co.</u>, 244

---

[4]It may be noted that prior to 1982, the predecessor to the statute of limitations applicable

here (see 735 ILCS 5/13-212 (West 2004); Ill. Rev. Stat. 1977, ch. 83, par. 22.1) did not

specifically refer to the fraudulent concealment statute, which is currently section 5/13-215, and

was previously section 22 of the Limitations Act. At that time, it was not clear whether the

fraudulent concealment statute in the Limitations Act applied to medical malpractice cases; the

supreme court, in <u>Witherell v. Weimer</u>, 85 Ill. 2d 146, 158 (1981), declined to resolve the issue

and instead applied general principles of equitable estoppel to prevent the defendant doctors in

28

Ill. App. 3d 709, 720, 614 N.E.2d 34, 42 (1993) ("It is well settled that issues not raised in the trial court are generally waived on appeal").

### D. Plaintiffs' Request for Leave to File a Second Amended Complaint

Plaintiffs next contend that although their first amended complaint adequately pled fraudulent concealment to toll the statute of limitations, the circuit court abused its discretion in failing to allow a second amended complaint which made additional allegations of fraudulent concealment and agency, raised additional causes of action based on common law fraud, and charged defendants with destruction of evidence. Plaintiffs stress that the circuit court made its

---

that case from asserting the statute of limitations. However, in 1982 the statute was amended and reference was specifically made to the fraudulent concealment statute. See Pub .Act 82-783, art. III, § 43, eff. July 13, 1982. Since the amendment, several courts have referred to the effect of the fraudulent concealment statute as equitable estoppel. See, *e.g.*, Barbour, 156 Ill. App. 3d at 330, 509 N.E.2d at 563. The main difference between general equitable estoppel and section 13-215 fraudulent concealment is that, although they both involve the defendant doing something to lull or induce the plaintiff to delay the filing of his claim, equitable estoppel may apply even where the defendant's actions are unintentionally deceptive. Compare Foster, 252 Ill. App. 3d at 699, 625 N.E.2d at 203, with Witherell, 85 Ill. 2d at 159. However, to the extent that section 13-215 and equitable estoppel remain distinct, their differences would not change the outcome here, even if plaintiffs had preserved an equitable estoppel argument, and our earlier discussions with respect to fraudulent concealment would still apply.

initial ruling on this issue on August 6, 2004, prior to seeing the proposed second amended complaint and then, at the hearing on plaintiffs' motion for reconsideration, stated that it would stand on its earlier ruling. Plaintiffs contend that the circuit court made its ruling under a mistaken assumption that a pleading cannot fix a statute of limitations problem when, in fact, pleadings with regard to fraudulent concealment *can* save an otherwise untimely complaint.

Plaintiffs' proposed second amended complaint consists of 14 counts and a background and fraudulent concealment section applicable to all counts. Counts I and II charge Advocate Hospital with direct negligence with respect to Michael and Madeline. Counts III and IV charge Dr. Hiatt with negligence (although, Dr. Hiatt's estate has remained unserved). Counts V and VI charge Dr. Del Castillo with negligence. Counts VII, VIII, IX, and X charge Advocate Hospital with vicarious liability for the torts of Drs. Hiatt and Del Castillo under the doctrines of *respondeat superior* and apparent agency. Count XI charges Advocate hospital fraudulent concealment as a "substantive cause of action." Count XII charges Dr. Del Castillo with fraudulent misrepresentation. Counts XIII and XIV charge Advocate Hospital and Dr. Del Castillo with spoilation of evidence.

Whether to grant a motion to amend pleadings rests within the discretion of the trial court, and a reviewing court will not reverse a trial court's decision absent an abuse of that discretion. Lee v. Chicago Transit Authority, 152 Ill. 2d 432, 467, 605 N.E.2d 493, 508 (1992). The relevant factors to be considered in determining whether the circuit court abused its discretion are

"(1) whether the proposed amendment would cure the defective pleading; (2)

whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." Loyola Academy v. S & S Roof Maintenance, Inc., 146 Ill. 2d 263, 273, 586 N.E.2d 1211, 1215-16 (1992), citing Kupianen v. Graham, 107 Ill. App. 3d 373, 377, 437 N.E.2d 774 (1982).

A proposed amendment must meet all four Loyola Academy factors; however, "if [a] proposed amendment does not state a cognizable claim, and thus, fails the first factor, courts of review will often not proceed with further analysis." Hayes Mechanical, Inc. v. First Industrial, L.P., 351 Ill. App. 3d 1, 7, 812 N.E.2d 419, 424 (2004).

With regard to their charges of direct negligence and vicarious liability against Advocate Hospital, plaintiffs assert that their proposed amended complaint, like their first amended complaint, made sufficient allegations of fraudulent concealment perpetuated by Drs. Hiatt and Del Castillo and hospital staff, which is attributable to Advocate Hospital through the general rules of agency. However, as stated above, although general agency law may well impute an agent's fraud to an unknowing principal, for purposes of section 13-215, only a knowing principal will be estopped from asserting the statute of limitations on the basis of the fraudulent concealment of an agent. See Wood, 142 Ill. 280-81, 31 N.E.2d at 683; Kenroy, 78 Ill. 2d at 563, 402 N.E.2d 181; Barbour, 156 Ill. App. 3d at 326, 509 N.E.2d at 560. Plaintiffs' proposed amended complaint does not allege knowledge on the part of any principal of Advocate Hospital. Therefore, plaintiffs' allegations of negligence against Advocate Hospital do not meet the first

Loyola Academy factor and the dismissal by the circuit court of these claims did not amount to an abuse of discretion.

Plaintiffs' proposed amended complaint also alleged new causes of action against Advocate Hospital and Dr. Del Castillo based on fraud. As noted, fraudulent concealment as set out in section 13-215 does not establish an independent cause of action, but merely acts to toll the statute of limitations applicable to various claims. See 735 ILCS 5/13-215 (West 2004). However, allegations of fraud that may overlappingly satisfy section 13-215 may potentially be sufficient to state an independent cause of action. To state a claim for fraudulent misrepresentation, a plaintiff must allege:

"(1) a false statement of material fact; (2) that the party making the statement knew the statement was false or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on that statement and did, in fact, rely on it; (4) the statement was made for the purpose of inducing the other party to act; and (5) that reliance by the person to whom the statement was made led to his injury. [Citation]." Stewart v. Thrasher, 242 Ill. App. 3d 10, 15-16, 610 N.E.2d 799, 803 (1993).

Furthermore, although an affirmative misrepresentation is normally required to state a claim, a mere concealment may amount to a misrepresentation when it is "done with an intent to deceive under circumstances creating an opportunity and a duty to speak," and the "concealed information [is] such that the other party would have acted differently had he been aware of it." Stewart, 242 Ill. App. at 16, 610 N.E.2d at 803.

32

Plaintiffs contend that Advocate Hospital, through its staff and agents, including Dr. Del Castillo, fraudulently misrepresented the circumstances surrounding Michael's birth and thereby independently caused Michael's injuries as well as damages in the form of emotional and financial hardships associated with Michael's diminished capacity. However, the statutes of limitations and repose in section 13-212 apply to any action against a hospital or physician arising out of patient care whether predicated on negligence or fraud. See 735 ILCS 5/13-212 (West 2004). Concomitantly, the requirements for tolling the limitations period for an action for fraud against a hospital are the same as those for negligence. See 735 ILCS 5/13-215 (West 2004); Foster, 252 Ill. App. 3d at 699, 625 N.E.2d at 203. As above, plaintiffs allege that the fraud was perpetrated by Advocate Hospital's agents and do not allege that any principal of the hospital was aware of the fraud. Therefore, plaintiffs have, again, not adequately pled fraudulent concealment to toll their claim of fraud against Advocate Hospital. Consequently, plaintiff's have failed to satisfy the first Loyola Academy factor and the circuit court's refusal to allow the amendment cannot be deemed an abuse of discretion on the basis of this claim.

Plaintiffs similarly allege in their proposed amended complaint that Dr. Del Castillo is liable for damages caused by his fraudulent misrepresentation that the caesarian section was necessitated by the size of the baby's head, when in fact it was indicated by symptoms of fetal distress. Specifically, the paragraph in plaintiffs' proposed amended complaint dealing with the damages caused by Dr. Del Castillo's alleged fraud states:

"97. Michael's injuries as well as Madeline's resulting from the fraudulent

misrepresentation and the intentionally inflicted emotional distress resulting from

33

the recently determined information that all of the emotion, time, energy and

expense and years of sociological consultation, psychological consultation,

psychological care, psychiatric care, educational consultation, special educational

efforts, and sibling and family adjustments all directed at the care and treatment

of wrongfully diagnosed and believed emotional and environmentally induced

developmental causes contributing to Michael's learning issues was in fact due to

physical injuries received while an unborn patient at the defendant hospital 22

years ago."

Although the damages alleged by this paragraph are not altogether clear, plaintiffs

apparently are contending that Dr. Del Castillo's fraud caused them damages only in the form of

emotional distress, and that their emotional distress arose from their not knowing that all of the

previous emotional and financial hardships resulting from Michael's brain damage were actually

caused by medical negligence rather than some other factor. To the extent, if any, that this

paragraph purports to allege that Dr. Del Castillo's alleged fraudulent misrepresentation was the

cause of Michael's brain damage, we would find it untenable because those damages, if

wrongfully caused at all, would have occurred as a result of negligence regardless of any

misrepresentation. In other words, there is no nexus between Dr. Del Castillo's alleged

fraudulent statement and Michael's physical injuries. Thus, plaintiffs, apparently recognizing

this limitation of their fraud claim, allege damages of emotional distress stemming from not

knowing the truth about Michael's birth.

As noted, a claim for fraudulent misrepresentation must allege "that reliance by the

person to whom the statement was made led to his injury. [Citation]." Stewart, 242 Ill. App. 3d at 16, 610 N.E.2d at 803. See also City of Chicago v. Michigan Beach Housing Cooperative, 297 Ill. App. 3d 317, 323, 696 N.E.2d 804, 809 (1998) ("Damage is an essential element of fraud"). Generally, the damages necessary to support a cause of action for fraud must be pecuniary in nature. See Michigan Beach Housing Cooperative, 297 Ill. App. 3d at 323, 696 N.E.2d at 809 ("fraud primarily addresses the invasion of economic interests"); Giammanco v. Giammanco, 253 Ill. App. 3d 750, 761-62, 625 N.E.2d 990, 1000 (1994); D. Dobbs, Remedies § 9.1, at 591 (1973). Although some cases have extended this rule to include those things "which the law recognizes as of pecuniary value," a plaintiff's damages to support a claim of fraud must nevertheless be "material," and may not consist solely of emotional harm. Giammanco, 253 Ill. App. 3d at 762, 625 N.E.2d at 1000, citing 37 Am. Jur. 2d *Fraud & Deceit* §292, at 388 (1968), Shults v. Henderson, 625 F. Supp. 1419, 1426 (W.D.N.Y. 1986), Walsh v. Ingersoll-Rand Co., 656 F. 2d 367, 371 (8th Cir. 1981) ("damages for emotional harm are not recoverable in actions in fraud"). See also Jurcich v. General Motors Corp., 539 S.W.2d 595, 601-02 (Mo. App. 1976) (holding that plaintiff failed to state damages to support a claim for fraud when he alleged that the defendant's fraud caused him pain and suffering but not the underlying injury). Furthermore, "[i]n an action for fraud, damages may not be predicated on mere speculation and must be a proximate consequence of the fraud. [Citation.]" Leahy Realty Corp. v. American Snack Foods Corp., 253 Ill. App. 3d 233, 254, 625 N.E.2d 956, 971 (1993). Therefore, plaintiffs' allegation of fraudulent misrepresentation against Dr. Del Castillo in their proposed amended complaint fails to allege damages recoverable under that tort.

Additionally, to state a claim for intentional infliction of emotional distress, a plaintiff must allege "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress." Tuite v. Corbitt, 358 Ill. App. 3d 889, 899, 830 N.E.2d 779, 789 (2005). Plaintiffs have clearly not satisfied the second element of intentional infliction of emotional distress. Plaintiffs allege that Dr. Del Castillo attempted to conceal the injuries sustained by Michael by fraudulently telling Madeline that the caesarean section was necessitated by the size of the baby's head. Thus, it would be contradictory to allege that Dr. Del Castillo also intended for his false statement to cause the plaintiffs emotional distress, because he allegedly intended that the plaintiffs never discover the falsity of his statement. Therefore, since plaintiffs' proposed second amended complaint fails to state a cause of action for either fraudulent misrepresentation or intentional infliction of emotional distress, the circuit court did not abuse its discretion in disallowing an amendment on these bases.

With regard to their charge of negligence against Dr. Del Castillo in their proposed second amended complaint, plaintiffs contend that they made additional allegations of negligence and additional allegations of fraudulent concealment on the part of Dr. Del Castillo, which would toll the limitations period applicable to their direct cause of action against him. However, no new instance of negligence is alleged; rather, the same acts are merely, in the words of plaintiff, "alleged in greater detail." Plaintiffs, as before, do not allege that Dr. Del Castillo had a duty to attend to Madeline prior to the time he saw her at 9:50 a.m. Moreover,

36

they allege that Michael had suffered injuries *in utero* prior to Dr. Del Castillo's arrival.

Furthermore, as with their first amended complaint, plaintiffs' proposed amended complaint

alleged that Dr. Del Castillo negligently delayed the caesarean section from 9:50 to 11 a.m.;

however, while both the first amended complaint and the proposed second amended complaint

acknowledge that Dr. Del Castillo ordered the surgery to be performed after his arrival at 9:50

a.m., neither complaint specifically alleges that Dr. Del Castillo, having been called for

consultation, had a duty to perform the surgery himself or otherwise expedite it by means other

than those he actually employed. Therefore, we find that plaintiffs' allegation of negligence

against Dr. Del Castillo also fails the first Loyola Academy factor and the alleged fraudulent

concealment attributable to Dr. Del Castillo is thereby irrelevant.

Finally, the last counts of plaintiffs' proposed amended complaint charges defendants

with fraudulent spoliation of evidence in furtherance of their fraudulent concealment.

Specifically, the proposed amended complaint states that "Dr. Del Castillo, individually or in

concert with [Advocate Hospital] have fraudulently secreted [the consultation report]," and that

Advocate Hospital "has *intentionally* secreted and/or destroyed Plaintiffs' critical medical

records." (Emphasis added.) In their brief, plaintiffs support their spoliation claim solely in a

footnote, in which they state:

> "[w]here a duty arises through law or voluntary undertaking to retain and preserve
>
> evidence, then the destruction or the secreting of evidence – like the evidence of
>
> Dr. Del Castillo's consultation report – serves as a predicate for a claim of
>
> *negligence* in the spoliation of evidence." (Emphasis added.)

37

In support of this contention, plaintiffs cite three Illinois cases. See Boyd v. Travelers Insurance Co., 166 Ill. 2d 188, 652 N.E.2d 267 (1995); Andersen v. Mack Trucks, Inc., 341 Ill. App. 3d 212, 793 N.E.2d 962 (2003); Jackson v. Michael Reese Hospital & Medical Center, 294 Ill. App. 3d 1, 689 N.E.2d 205 (1997).

In Boyd, the supreme court refused to recognize an independent tort for negligent spoliation of evidence, but noted that a cause of action for negligent spoliation could be established under general negligence theories. Boyd, 166 Ill. 2d at 192-93, 652 N.E.2d 270. The court stated: "[i]n a negligence action involving the loss or destruction of evidence, a plaintiff must allege sufficient facts to support a claim that the loss or destruction of the evidence *caused the plaintiff to be unable to prove* an underlying lawsuit." (Emphasis original.) Boyd, 166 Ill. 2d at 196. The court further stated: "A plaintiff must demonstrate *** that but for the defendant's loss or destruction of the evidence, the plaintiff had a reasonable probability of succeeding in the underlying suit." Boyd, 166 Ill. 2d at 196 n.2. Thus, the injury for which a claim of spoliation of evidence seeks redress is necessarily related to the plaintiff's ability to bring an underlying claim. The Andersen and Jackson cases cited by plaintiffs similarly discuss negligent spoliation of evidence and are in accordance with Boyd. See Andersen, 341 Ill. App. 3d at 215, 793 N.E.2d at 966; Jackson, 294 Ill. App. 3d at 10, 689 N.E.2d at 211.

Although, due to inconsistencies between plaintiffs' proposed amended complaint and their appellate brief, it is not clear whether plaintiffs intended to state a claim for intentional or negligent spoliation of evidence, in either case, plaintiffs cannot state a new cause of action based on spoliation. As noted, to state a claim for negligent spoliation, a plaintiff must allege

that but for the spoliation by defendant, plaintiff likely would have prevailed in the underlying suit. Boyd, 166 Ill. 2d at 196, 652 N.E.2d at 271. Plaintiffs cannot show such a likelihood here because the document they allege was destroyed by the defendants was provided to them prior to the initiation of this suit. More importantly, the document in question is in the record and its authenticity has not been challenged by either defendant.

Similarly, plaintiffs proposed amended complaint does not state a claim for intentional spoliation of evidence. After addressing spoliation in the context of negligence, the supreme court in Boyd declined to specifically recognize intentional spoliation of evidence as a tort in Illinois; however, the court noted that even if such a tort were recognized, under the facts of that case, the plaintiffs had not sufficiently alleged an intentional destruction of evidence. Boyd, 166 Ill. 2d at 201, 652 N.E.2d at 273. Plaintiffs cite to no case that specifically recognizes intentional spoliation of evidence as a tort in Illinois. Neither have we found such an Illinois case. See Dardeen v. Kuehling; 213 Ill. 2d 329, 335-36, 821 N.E.2d 227, 231 (2004) (discussing but not expanding Boyd's treatment of spoliation); accord Andersen, 341 Ill. App. 3d at 215, 793 N.E.2d at 966; Jackson, 294 Ill. App. 3d at 10, 689 N.E.2d at 211; Jones v. O'Brien Tire & Battery Service Center, Inc., 322 Ill. App. 3d 418, 420-22, 752 N.E.2d 8, 11-12 (2001); Kelly v. Sears Roebuck & Co., 308 Ill. App. 3d 633, 646, 720 N.E.2d 683, 693 (1999); Chidichimo v. University of Chicago Press, 289 Ill. App. 3d 6, 10-11, 681 N.E.2d 107, 110 (1997). However, as in Boyd, even if intentional spoliation were a tort in Illinois, plaintiffs have not alleged facts to support such a cause of action. We think that, as with negligent spoliation, the injury

contemplated by a claim for intentional spoliation must relate to the ability to bring an underlying claim. See <u>Boyd</u>, 166 Ill. 2d at 196, 652 N.E.2d at 271. See also T. Fischer, Annotation, *Intentional Spoliation of Evidence*, *Interfering with Prospective Civil Action as Actionable* 70 A.L.R.4th 984, 985 (1989) (characterizing the action as dealing with "[interference] with another's prospective or actual civil action against another"). Therefore, the fact that document allegedly destroyed by the defendants is in the record and was provided to Madeline by the defendant hospital less than a year prior to the initiation of the suit precludes recovery under this theory. The damages plaintiffs state in the spoliation claim of their proposed amended complaint consisted of "additional attorneys fees in an effort to locate the document," and "aggravated emotional distress." These alleged injuries do not reflect on the ability to bring an underlying claim and would therefore not be recoverable under an intentional spoliation of evidence claim, particularly where the allegedly spoliated evidence is part of the record. Rather, if the injuries alleged by plaintiffs are recoverable at all, they would be recoverable only under some other theory of law not articulated or otherwise urged by plaintiffs. Accordingly, as with the other counts of plaintiffs' proposed second amended complaint, plaintiffs' spoliation claims do not warrant a reversal of the circuit court's order.

### III.    CONCLUSION

For the foregoing reasons, we affirm.

Affirmed.

BURKE and McBRIDE, JJ., concur.

40